CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 13 2017

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

MALCOLM MUHAMMAD, #1025895,
Plaintiff,

V.

CASE NO: 7:17-CV-00481

L.J. Fleming, C. Manis, Quinn C. Reynolds, Marcus Elam, M. Williams, M. Breyles, Henry Ponton, N. Gregg, S. Stallard, Jimmy Mitchell, C/o Pauley, C/o Barnes, c/o phillips, Sgt. Porchie, Hearing officer Hensley, Lt. Light, and B.J. Ravizee sued in their official and individual capacities.
Defendants.

## I. JURISDICTION + VENUE

1. This is a civil action authorized by Section 1983 to redress the deprivation under color of state law of rights secured by the constitutional of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Plaintiff seek declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff claims for injunctive relief are authorized civil Procedure and 42 U.S.C. § 2000 The Religious Land Use and Institutionalized Person Act- ("RLUIPA"),

2. The western District of Virginia is an appropriate venue under 28 U.S.C. Section 1391 (b) (2), because it is where the events giving rise to this claim occured.

## II. PLAINTIFF

3 Plaintiff Malcolm Muhammad, pro se, is and was at all times mentioned herein a prisoner of the state of Virginia in custody of the Virginia Department of Corrections-("VDOC's"). Plaintiff is currently housed at Sussex I. State Prison- ("SISP").

# III. DEFENDANTS

4. Defendants C. Manis, who is the warden now and Fleming, who was the warden at Wallens Ridge State Prison - ("WRSP"). They was legally responsible for the operation of WRSP and the welfare of all inmates of that prison. They are sued in their official and individually,

5. Defendant J. Combs, is the Assistant warden of WRSP, he is Legally responsible for the operation of WRSP and the welfare of all inmates of that prison, He is sued in his official and individually Capacity.

6. Defendant Quinn C. Reynolds, is the Unit Manager of C-Building. He is Legally responsible for the operation of C-building at WRSP. He is sued in his individually Capacity.

7. Defendant Marcus Elam, is the Regional Administrator of the Western Regional, He is Legally responsible for the Western Division of VDOC. He is sued in his individually capacity.

8. Defendant M. Williams, is the Business office Manager of WRSP. She is sued in her individually Capacity.

9. Defendant M. Broyles, is the Assistant Food Service Director of WRSP. He is Legally responsible for the service of foods. He is being sued in his individually capacity.

10. Defendant Henry Ponton, is the Regional Administrator Director of Western Regional. He is sued in his individually Capacity.

11. Defendant N. Gregg, is the Head Food Dietition for VDOC, she is Legally responsible for the service of food of VDOC, She is sued in her individually capacity.

12. Defendant S. Stallard, is the Food Service Director of WRSP, she is legally responsible for the serving of foods. She is sued in her individually capacity.

13. Defendant Jimmy Mitchell, is the Chaplain of WRSP, He is responsible for all religious programs. He is sued in his individually Capacity.

14. Defendant C/o Barnes, is the Correctional officer of WRSP. He is sued in his individually capacity.

15. Defendant C/o Pauley, is the Correctional officer of WRSP. He is sued in his individually capacity.

16. Defendant C/o Phillips is the Correctional officer of WRSP. He is sued in his individually capacity.

17. Defendants Lt. Light, and Sgt. Perchie, who are both high ranking officials of WRSP. They are responsibles of their subordinates, They are sued in Their individually Capacity.

18. Defendant Hensley, is the hearing officer of WRSP, he is responsible of all Disciplinary Hearings. He is sued in his individually Capacity.

19. Defendant B.J. Ravizee, is the Grievance Cordinator at WRSP, she is sued in her individually capacity.

20. Defendant Lt. Light, is the Lieutenant of WRSP, he is sued in his individually capacity.

21. All the defendants have acted and contiue to act, under color of state law at all times relevant to this complaint.

## FACTS

22. On october 31, 2015, plaintiff made his first request complaint concerning Food Service at WRSP, who changed his Religious Diet that of Common-fare-("C/F") diet, by serving fried food's and food from the Master Menu.

23. Under the Virginia Department of Corrections-("VDOC"), Operating Procedure-("OP"), 841.3, and Food Service Manual; Chapter-4, Religious Diet / C/F meals states, "C/F is a religious diet for offenders whose religious dietary needs cannot be met by the Master Menu.

24. On November 3, 2015, Defendant Broyles, responded to plaintiff request by stating, "the C/F menu was provided to us by head dietician in Richmond VDOC, Defendant N. Gregg.

25. Plaintiff repeatly written several request complaints forms to Defendants Stallard and Broyles, concerning serving fried foods and food served on C/F from the same food to general population that was not Kosher.

26. Plaintiff also written several request complaints to Defendant Stallard, and Broyles, concerning his religious diet that was not provided with no fruits, but served only juice bags, served as fruits that is not Kosher.

27. Plaintiff filed a Informal Complaint-("INF") on November 11, 2015, concerning fried foods and C/F diet served of the same food from general population.

28. On November 13, 2015, Defendant Broyles, responded to plaintiff INF complaint stating, "A Lot of items served to "general population is also Kosher.

29. On November 17, 2015, plaintiff filed a grievances to his INF Complaint.

30. On December 4, 2015, Defendant Combs, responded to plaintiff's grievances stating "if plaintiff feel the C/F diet doesn't meet his religious belief he may elect to voluntary withdraw from the C/F diet; and all the procedure where followed.

31. On December 7, 2015, plaintiff appeal level 1, response to the Regional office concerning his diet.

32. On January 6, 2016, Defendant Porter, respond to plaintiff's Appeal stating, "that level-1, response is appropriate and no procedure violation are noted.

33. The C/F Agreement states, "at number II, "if Im observed eating, trading, or possessing unauthorized food items from the main line (Master Menu) is a violation of C/F program.

34. Defendants serving fried food, eggs, no whole fruits, or raw vegetables, all vegetables cooked, serving all beans and no veg. beans, sweet potatoes, white bread, white rice, cake thats made from the kitchen, no whole tuna fish, everything fried and fried foods is not Kosher food, in violation of plaintiff's religious diet.

35. On Feburary 15, 2016, plaintiff filed a INF complaint because he was denied caborn paper to make copies for his legal work, but had to pay 10¢. per copy and $ 1.00 handling charge.

36. On Feburary 19, 2016, plaintiff INF complaint was responded to stating, "you are required to pay for copies made", by the Business Department.

37. On Feburary 23, 2016, plaintiff filed a grievance and grievance coordinator Defendant Ravizee, violated the plaintiff complaint by stating "the plaintiff was only requesting for service", plaintiff appeal this statement to Regional office on Feburary 25, 2015, and his appeal was denied on March 3, 2016, by Regional.

38. On March 20, 2016, plaintiff filed a INF complaint because he was denied by Defendant Mitchell, to have a religious study guide class called The Fruit of Islam - ("FOI") while the Sunni Muslims offenders was allowed to have a study class called "Talim".

39. On April 1, 2016, plaintiff's INF complaint was responded by Defendant Reynold, turning the blind eye to the issue, on being harass by defendant Pauley.

40. On April 5, 2016, plaintiff filed a grievance concerning not allowed to have a study class, when other religious programs was allowed and provided such class.

41. On April 6, 2016, plaintiff grievances was responded to by Defendant Ravizee,

stating, "Plaintiff was only requesting for service".

42. On also April 6, 2016, plaintiff Appeal this decision by Defendant Ravizee, to the Regional office, and on April 13, 2016, Regional ombudsman up held the decision.

43. On March 3, 2016, an Institutional classification Authority -("ICA") hearing was conducted and was recommended suspension of plaintiff religious diet, in relation for filing grievances and complaints to food service, according to the report, "plaintiff had ordered food items from the Quarterly Incentive Package that was not approved for the plaintiff to order for C/F program.

44. On March 9, 2016, Defendant Reynolds, and Combs, recommended suspension of C/F program because plaintiff ordered "Pink Salmon, Raspberry shortbread cookies and Cheezit Cheddar Jack Crackers, stating, these items was not Kosher,

45. On March 10, 2016, plaintiff filed a grievance concerning his religious diet being suspended for one (1) year, due to him ordering foods items from the package.

46. On June 7, 2016, Defendant Fleming, responded to plaintiff's grievance from Level-1, Response up-holding the decision to suspend plaintiff religious diet for one (1) year, due to the stated food items was not Kosher,

47. On June 7, 2016, plaintiff Appeal level-1, response to Regional office and on July 1, 2016, plaintiff Appeal was upheld by Defendant Marcus Elam,

48. On June 9, 2016, plaintiff filed a INF Complaint requesting that Defendant Williams, by the agreement of the U.S. District Court and plaintiff, under Rule 28 U.S.C. § 1915 (b) (1)-(2), this agreement is not being followed that, the courts shall be paid every month when the plaintiff inmate account exceed to the amount of $ 10.00, for his filing fees of 20%,

49. On June 16, 2016, plaintiff received a response from defendant Williams turning a blind eye to the issue, plaintiff filed a grievance on July 5, 2016, and it was responded to by grievance coordinator Defendant Ravizee, requesting to send her plaintiff's Trust receipts for review. These request was sent and on August 4, 2016, Defendant Fleming, responded to Level-1, response up-holding the decision by defendant Williams. Plaintiff Appeal decision to Regional office and his Appeal was denied on August 23, 2016, by Defendant Elam,

50. On June 16, 2016, plaintiff filed a INF Complaint because plaintiff does not eat eggs and it was approved by Defendant Brayles, on June 21, 2016, stating to plaintiff " when eggs are served on the main entree (Master Menu), the plaintiff would receive a non-egg tray.

51. Ramandan for Muslim religious practice, belief for fasting started on June 5, 2016, to July 5, 2016, during Ramandan, the plaintiff was continued served eggs the complete thirty (30) days of his ~~fast~~. The NOI participants by religious law do not eat any land animals during Ramandan, poultry is prohibit including it products,

52. Plaintiff was denied by Defendants Stallard, Brayles, and Gregg to receive an Alternative for substituted of eggs, when the VDOC policy states, require that cheese could be served, if no product in the cheese is made with pork product.

53. On June 21, 2016, plaintiff receive a response from Defendant Brayles, Stating, "the NOI fast, do not have an Alternative entree during Ramandan.

54. Plaintiff filed a grievance on June 23, 2016, and he received a Level-I, Response from Defendant Fleming on July 21, 2016, stating, "Defendant N. Gregg, States, "the NOI fast, do not have an Alternative entree during Ramandan.

55. On July 23, 2016, plaintiff Appeal the decision of level-I, Response by Defendant Fleming to the Regional office and he received a response to level-II, up-holding the decision that was made by Defendant Fleming by Defendant Elam, on August 17, 2016, stating, "procedure correctly applied.

56. On August 21, 2016, plaintiff filed a informal Complaint stating " C/o Pauley, had threaten the plaintiff and harassing the plaintiff who stated and did retaliated against the plaintiff if he file a complaint against him and plaintiff requested for WRSP officials to investigate this Complaint.

57. On August 24, 2016, plaintiff received a response by Defendant Reynolds, denying to investigate his complaint concerning C/o Pauley threaten to retaliate against him.

58. On August 27, 2016, plaintiff filed agrievance that Defendant Pauley was threatening him and harassing the plaintiff.

59. On August 29, 2016, Defendant Ravizee, denied plaintiff response to his complaint stating his complete complaint was only hear say concerning Defendant Pauley.

60. On August 29, 2016, plaintiff written a complaint letter to Department of Corrections - ("DOC") special investigation Unit Mr. Paul Haymes chief, because plaintiff was fearful that Defendant Pauley would retaliate against in some kind of way as he stated he would.

61. On August 30, 2016, plaintiff filed an Appeal to Regional Admin. concerning Defendant Pauley retaliating comments.

62. On September 2, 2016, plaintiff received response from Regional Admin, up-holding the decision by Defendant Ravizee, that plaintiff complaint contain insufficient information, as it decision.

63. On October 25, 2016, plaintiff was told by WRSP officials to pack-up all his property because he had to go to the Medical Department to be housed there for a scheduled Hospital appointment that was coming.

64. On also, October 25, 2016, while plaintiff was housed in Medical c/o Middleton, came back to plaintiff housed medical door and told him that, "he did not bring his property to be reviewed because all of his property was pack-up and sent to property and that I would be back out medical the next day, plaintiff sign the property forms believing c/o Middleton statements to be truthful.

65. On October 28, 2015, plaintiff return back to general population and once he enter the pod, several offenders K. Terry and Tate and D. Murry had in their possession plaintiff's personal property. Plaintiff had pack all his property up before leaving and place the property in front of the pod office where Defendant Pauley and Barnes was who had totally view of plaintiff's property.

66. Defendant Pauley and Barnes, who suppose to have inventory all plaintiff's property, who threw away in trash all plaintiff's religious materials that of the Final-Calls and food items, who they allowed one of the offenders to steal my property out my bag within the front pod door.

67. Offenders K. Terry and Tate, return to plaintiff Approximately Twenty (20) Final Calls that they found in the trash that was received by offender D. Murdy and what was found on the pod table and office trash.

68. Once Defendants Pauley and Barnes, seen plaintiff received the same religious materials that they threw away, when they inventoring his personal property, c/o Pauley came to the table and took all plaintiff's Final Calls while plaintiff was taking a shower into the pod office where Defendant Barnes and Defendant Perchre was.



HU 1/2

69. Once plaintiff got out the shower, he was call to the pod office by Defendants Pauley and Barnes and Sgt. Porchie who was in the office. Plaintiff was ask by them all, "who gave him his Final call papers and if plaintiff did not tell them, that was stated by Defendant Pauley, that they would remove the plaintiff out the honor pod.

Plaintiff told them who gave him his property and offenders K. Terry and Tate was call into the pod office and they was question by Defendants and they admitted to Defendants Pauley, Barnes and Sgt. Porchie that they found plaintiffs property in the pod office trash can, some was given to them and some left on the pod table.

70. On october 28, 2016, plaintiff was call back into the pod office after defendants finish talking with the offenders, plaintiff then received a confiscation ferm stating, "his religious materials that of the Final call was being confiscated and plaintiff could only have one paper. This confiscation was not done the day of their inventory.

71. Also, on October 28, 2016, plaintiff was call back again for the third time in the pod office Approximately 5:05 p.m., plaintiff then received a charge stating, "for making vular or insolent language or gesture directed towards defendants Pauley and Barnes" when plaintiff was exiting the pod office. However, Defendant Sgt. Porchie, was also in the pod office sitting closer to the plaintiff then any of them.

72. On October 30, 2016, the plaintiff request to have the "pod video footage reviewed on october 25, 2016, showing evidence that officials and plaintiff place all his personal property in front of the pod office front door in the present of Defendants Pauley and Barnes, and evidence would have shown offender "James Yard Borough" stealing plaintiffs property in the view of defendants Pauley and Barnes.

73. Also, on October 30, 2016, plaintiff request to have witness Chad Goins, who was standing at his cell door watching plaintiff's property being stolen in the front of Defendants Pauley and Barnes by offender J. Yard Borough, who he seen offenders K. Terry, Tate and D. Murdy collected and had in their possession plaintiff's property.

74. On October 31, 2016, plaintiff written a complaint letter to WRSP investigator Mr Harris, and Defendant Fleming, request them both to investigate the pod video that would have shown evidence that plaintiff's property was thrown away, stolen in the present of these defendants, who retaliated against the plaintiff for filing complaints against Defendant Pauley Approx. 1:30 to 2:15 p.m. on 10/25/2016.

75. On November 2, 2016, plaintiff was scheduled for a disciplinary hearing plaintiff was denied his requested Documentary evidence reviewed of the pod video and having his witness present was denied by defendant Hensley,

76. Defendant's Pauley and Barnes who was the officials who fail to inventory plaintiff personal property, Defendant Pauley, made threatening remarks to the plaintiff just a few months pass, who threw away and allowed plaintiffs property to be stolen and destroyed, Defendant Pauley who witness he heard the plaintiff say as he was existing the pod office "Fuck you all thats fucking bullshit."

77. Defendant Sgt. Perchier submitted a witness statement, who was also in the small pod office during the time of questioning stated, " he was in the office and he did not hear the plaintiff say no such words, who was closer to the plaintiff then Defendants Pauley and Barnes was in the pod office.

78. Plaintiff was found guilty of this false charge due to retaliation of making " Vulgar or insolent language that had the plaintiff removed out the honor pod, that what was stated by Defendant Pauley when he threaten the plaintiff.

79. On November 2, 2016, plaintiff written a grievance concerning his religious materials that was thrown away, there was evidence proven when plaintiff was question about his Final Calls that Defendants did throw them away who later confiscated his papers once it was known by defendants that plaintiff now knew.

80. Also on November 2, 2016, plaintiffs appeal the decision by Defendant Hensley, finding the plaintiff guilty and denying him all the requested Documentary evidence.

81. On November 6, 2016, plaintiff written a request again to the investigator Department requesting them to review the pod video because his first request was not answered.

82. Also on November 6, 2016, plaintiff seen Defendant Combs, making his rounds in the pod and he explain to him, his complaint, plaintiff was told by him to write him a letter concerning his personal property confiscated, stolen, and thrown away.

83. On November 14, 2016, Defendant Combs, responded to plaintiff grievances concerning his religious materials that was thrown away and confiscated stating, " plaintiff was only allowed one (1) news paper and the other nineteen was destroyed.

84. Also, on November 14, 2016, Defendant Fleming, denied the plaintiff's Appeal, who up-held the decision by Defendant Hensley concerning the plaintiff Disciplinary hearing.

85. On November 15, 16, and 20, 2016, plaintiff written several grievances concerning his personal and religious materials that was thrown away, stolen during the inventory conducted by Defendants Pauley and Barnes.

86. On December 7, 2016, plaintiff received a response from his complaint that his personal property was destroyed, confiscated and Defendant Fleming response was, "plaintiff sign the Special Status Inventory form stating all his property was there, therefore, no reimbursement will be given.

87. Plaintiff had never received or review his property after defendants Pauley and Barnes so-call inventoried his property, when plaintiff went to the medical Department, within one (1) hour, C/O Middleton, come to plaintiff door and said, " I did not bring your property back here to medical for your reviewal of property because I took to property and you would be out of medical tomorrow, back in general population. Plaintiff took his word to be truthful and sign the paper.

88. On December 1st, and 23rd day of 2016, Defendant Elam, denied the Appeal of the plaintiff's personal property and religious property on Level-II. Response.

89 On January 17, 2017, Defendant Rouizee, received plaintiff's complaint who denied the plaintiff Equal Protection on the plaintiff's religious services to be provided with a study guide class called "Fruit of Islam" - ("FOI"), when other religious programs was provided their study classes, rejecting the plaintiff religious services by stating, " it was only plaintiff requesting for service.

90. On June 27, 2017, Defendant Combs, Mitchell and Morris denied the plaintiff to celebrate his religious belief that of Eid-ul Fitr feast, a congregational prayer that's provided on the third (3th) day after Ramadan fasting for all Muslims.

91. Plaintiff Sincerely hold his religious belief that of the Nation of Islam - ("NOI") a muslim under the teaching of the Honorable Elijah Muhammad and Minister Louis Farrakhan Muhammad.

92. On July 25, 2017, Defendant phillips threw away plaintiff medical shoes when the plaintiff was dressing out to be transferred to Sussex I. State Prison. Plaintiff had on his medical shoes and he was ask by Defendant Lt. Light: are they medical shoes you are authorized to have them, Plaintiff explain that he was, Defendant Light, Call medical, before medical call back plantiff was told to take off the shoes, place the state shoes on until he get to SISP and he can put them back on. However, the shoes was given to Defendant phillips, to place them in plaintiff's transferred box, who said, "no, he's no longer our inmate and threw them into the trash can, this activities could be seen on the video and several witness seen him and Defendant Light, fail to correct his subordinaters.

93. Defendant's Fleming, Reynolds, and Elam who deliberately denied the plaintiff to exercise and practice his religious diet that of C/F due to retaliation on filing complaints on C/F foods, stating plaintiff ordering foods from the VDOC Quarterly Incentive package, suspended his diet for a year, because the foods was not Kosher,

94. Defendant's Combs, Broyles, Stallard, Gregg and Fenton denied the plaintiff to be provided an-adequate, nutritious and healthty diet by serving him fried foods and foods from the Master Menu that was served on his religious diet of C/F.

95. Defendants failure to follow the policy of food service by VDOC ops 841.3., and Food Service Manual Chapter 4., that infringed upon the plaintiffs ability to practice his religion that imposed a substantial burden on his free exercise of his religion.

96. Defendants Morris, Combs and Mitchell denied the plaintiff to celebrate the Eid-ul Fitr congregational prayer service the day of the feast,

97. Defendant's Fleming, Williams, and Elam who fail to provide the U.S. District Court with the monthly payments from the order by the court and the sign agreement by the plaintiff on his filing fees on 20% per month or per received funds and make payments everytime plaintiff courts account reaches the amount of $ 10.00, this created interest for the prison account denied plaintiff due process of law.

98. Defendant's Fleming, Broyles, Stallard, and Elam denied the plaintiff to exercise his religious Holiday of Ramandan by denying him an Alternative entree of Cheese because poultry or its products are prohibited. Eggs did have an Alterative.

99. Defendant Reynolds, failure to protect and investigate plaintiff's harassment and retaliation complaint that Defendant Pauley threaten the plaintiff to retaliate against him for filing a Complaint against him.

100. Defendant's Combs, Sgt. Perchire, and Elam denied the plaintiff to practice freely and exercise his religion by Confiscating his religious materials that of the Final Call, after evidence would have proven that Defendant Pauley and Barnes had thrown his personal property and religious materials in the trash.

101. Defendant's Pauley and Barnes retaliated against the plaintiff for filing complaints against Defendant Pauley, who both falsified a misconduct charge once they action was exposed,

102. Defendant's Fleming, Hensley, both denied the plaintiff to call witness and review documentory evidence that if reviewed it would have exculpated the false misconduct charge of evidence could be seen that defendant's Pauley and Barnes allowing offender stealing plaintiff personal property. in their view!

103. Defendant phillips, who intentially threw away plaintiff's medical shoes, causing the plaintiff with Cruel and Unusual pain and Defendant Menis, and Combs fail to take Disciplinary Action against Defendant phillips Unacceptable misconduct for his Unacceptable work performance.

104. Defendant Light, who fail to correct his subordinator when he was totally aware of Defendant phillips misconduct because this is the activities that they provided to WRSP offenders,

105. Defendant Ravizee, failure to respond to plaintiff's complaints has resulted to injury to plaintiff's Constitutionally protected interest under the First Amendment of Access to the Court, free exercising of plaintiff's religion and retaliation by Defendants Pauley and Barnes,

106. Defendant's Combs, Mitchell failure to allow the plaintiff to exercise of his religion by having a Congregational prayer Service on the celebrating of EId-ul-Fitr feast,

107. Defendant Mitchell, failure to provide the plaintiff with a religious study guide class, while other religious programs were allowed such classes, denied equal protection rights.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

108, plaintiff has exhausted his administrative remedies with respect to all claims and all Defendants,

~~109~~,

## V. LEGAL CLAIMS

109. Plaintiff's reallege and Corporate by reference Paragraph

110. The actions of Defendant's Fleming, Reynolds, and Elam who imposes cruel and unusual punishment with deliberatly indifferent denied the plaintiff to exercise and practice his religious diet the C/F, due to the ordering of foods items from VDOC Quartely Incentive package in retaliation for filing complaints on C/F issues in violation of the First, Eighth and Fourteenth Amendments of due process of law and claims of RLUIPA,

111. The actions of Defendant's Combs, Broyles, Stallard, Gregg and Pendon who denied the plaintiff to be provided an- adequate, nutritious and healthy diet in violation of the First, Fourteenth Amendments of due process of law and RLUIPA claim to the United States Constition.

112. The failure of Defendant's Fleming Broyles, Stallard, Gregg and Elam who denied the plaintiff to exercise and freely practice of his religious Holiday of Ramandan by denying him an Alterative entree of cheese for the substituting of eggs denied him the First, Fourteenth Amendment due process of law and RLUIPA claim to the U.S. Constitution.

113. The actions of Defendant's Combs, Sgt. Porchie, and Elam, who denied the plaintiff to practice and exercise of his religious materials by confiscating his Final Calls, when evidence would have proven if reviewed that Defendants Pauley and Barnes retaliated against the plaintiff and throwing away those religious materials, who intentionally denied the First, Eighth, and Fourteenth Amendment and RLUIPA claim to the United States Constitution.

114. The actions of Defendant's Pauley and Barnes, who both retaliated against the plaintiff for filing complaints against Defendant Pauley, who both falsified a misconduct charge, when evidence would have proven if was reviewed of pod video and witness and documents that they both acted in retaliation against the plaintiff in violation of the First, Fourteenth Amendments due process of law ~~and RLUIPA claim~~ to the United States Constitution.

115. The actions of Defendant Ravizee, who cause a constitutional injuries to plaintiff by denying his complaint failing to respond on issues of Access to the court, free exercise and practice of his religion and Retaliation by Defendants Pauley and Barnes in violation of plaintiff's First, Fourteenth Amendments due process of law to the United States Constitution.

116. The failure of Defendant Mitchell, who fail to provide the plaintiff with a study guide class for the NOI, when other religious programs was provided with such classes in violation of Equal Protection right under the Fourteenth Amendment and due process of law to the United States Constitution.

117. The failure of Defendant's Combs, Mitchell, and Manis, who denied the plaintiff to celebrate his religious belief of a congregational prayer service, the day of Eid-ul-Fitr feast in violation of the First, Fourteenth Amendment due process of law and RLUIPA claim to the U.S. Constitution.

118. The failure of Defendant Reynolds, who fail to investigate the harassment complaint by Defendant Pauley, who threaten to retaliate against the plaintiff for filing a complaint against Defendant Pauley, denied the plaintiff's due process of law in violation of the Fourteenth Amendment to the United States Constitution.

119. The actions of Defendant's Fleming, Hensley who fail to review the pod video and allowed plaintiff to call his witness that would have exculpated the false misconduct charge denied the plaintiff due process of law in violation of the Fourteenth Amendment to the United States Constitution.

120. The actions of Defendant phillips, who intentionally threw away plaintiff's medical shoes which cause cruel and unusual pain to the plaintiff foot wear, who had to assist medical care in violation of the Eighth Amendment and Fourteenth Amendment due process of law to the United States Constitution.

121. The failure of Defendant Light, to supervise his subordinator of the unacceptable, misconduct of work performance when the act was in his Knowledge, denied the plaintiff Eighth Amendment right of Cruel unusual pain and deliberately indiffence and due process of law under the Fourteenth Amendment to the United States Constitution.

122. The failure of Defendants Manis, Combs who both fail to review the video of Defendant phillips unprofessional misconduct of throwing away plaintiff's medical shoes denied the plaintiff due process of law under the Fourteenth Amendment to the United States Constitution.

123. The actions of Defendants Fleming, williams and Elam who fail to provide the U.S. District Court with a monthly payment, each month as was ordered by the court and the agreement of the plaintiff who gain interest of the saving, denied the plaintiff due process of law in violation of the Fourteenth Amendment to the United States Constitution.

## VI. PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully pray that this court enter judgment:

124. A declaration that the acts and Omission described herein Violated plaintiff's rights under the Constitutional Laws and Laws of the United States,

125. Expunge the disciplinary misconduct charge of "Vulgar or inselent Language" from the plaintiff's Institutional records and also Expunge the Second Suspension of the C/F that defendants Fleming, Reynolds and Elam who stated, "plaintiff violated C/F agreement from Ordering foods items from the Holiday package that offered by VDOC.

126. Award Compensatory damages in the amount of $ 30.00 a day, $ 10.00 a day for a tray for the total of 365 days total, $ 10,950.00, against Fleming, Reynolds, and Elam for denying to allow the plaintiff to receive his religious diet for a total of one (1) year suspension.

127. Award Compensatory damages in the amount of $ 5,000, against all the other Defendants.

128. Award Punitive damages in the amount of $ 10,000, against each Defendant for their reckless indifference of ill will to plaintiff's First, Eighth, Fourteenth Amendment rights and RLUIPA Claim to the United States Constitution.

129. A jury trial on all issue triable by jury.

130. Plaintiff's cost in this suit,

131. Any additional relief this court deems just, proper and equitable.

Respectfully submitted,

Maliek Muhammad #1025895
Sussex I. State Prison
24414 Mussel white Dr,
Waverly, Virginia 23891
pro se.

# CERTIFICATE OF SERVICE

I hereby certify that I have mail Complaint by the U.S. Postal service on the 9th day of October, 2017, to; office of the Clerk, Western District of Virginia, 210 Franklin Road S.W. Suite 540, Roanoke, Virginia 24011, Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Malcolm Muhammad #1025895
Sussex I. State Prison
24414 Musselwhite Dr.
Waverly, Virginia 23891
pro se.

Malcolm Muhammad #1025895
Sussex I, State Prison
24414 Musselwhite Dr.
Waverly, Virginia 23891




Office of the Clerk
Western District of Virginia
210 Franklin Road S.W. Suite 540
Roanoke, Virginia 24011

Legal/Mail

RECEIVED
OCT 11 2017
Mailroom
Sussex I St...