CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
SEP 25 2018
JULIA C. DUDLEY, CLERK
BY: H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MALCOLM MUHAMMAD, | ) | Civil Action No. 7:17-cv-00481 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| L. J. FLEMING, et al., | ) | By: Hon. Jackson L. Kiser |
| Defendants. | ) | Senior United States District Judge |

Malcolm Muhammad, a Virginia prisoner and frequent filer in this court, commenced this action pro se pursuant to 42 U.S.C. § 1983 and § 2000cc-1, et seq., about his experiences at Wallens Ridge State Prison. I previously ordered Plaintiff to file a second amended complaint that does not include a misjoined claim or defendant. See, e.g., Fed. R. Civ. P. 20(a)(2), 21; Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 618 (4th Cir. 2001). Plaintiff filed the new pleading, and Defendants filed a motion to dismiss or to strike misjoined claims and defendants.

Defendants argue in their motion that Plaintiff failed to comply with the prior Order and the Federal Rules, and they ask me to dismiss all but one claim about Plaintiff's religious diet in October 2015. Plaintiff argues in response that all claims and defendants in the new pleading concern the same series of allegedly retaliatory transactions and have common questions of law and facts resulting from Plaintiff's exercise of a First Amendment right.

Defendants' motion to dismiss or to strike must be denied. Booker v. South Carolina Department of Corrections, 855 F.3d 533, 545 (4th Cir. 2017), held in 2017 that, since 2010, prisoners in this circuit have had a clearly-established First Amendment right to file a written prison grievance without suffering retaliation. At least one unpublished circuit court opinion has remanded a case under Booker, finding a federal case because a prisoner made a "verbal

complaint" to staff and then something adverse to the prisoner happened later. See, e.g., Patton v. Kimble, 717 F. App'x 271, 272 (4th Cir. 2018).

Almost fifty years earlier, the Supreme Court recognized that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Procunier v. Martinez, 416 U.S. 396, 405 (1974). The Court explained:

> [Federal courts] are ... ill suited to act as the front-line agencies for the consideration and resolution of the infinite variety of prisoner complaints. Moreover, the capacity of our criminal justice system to deal fairly and fully with legitimate claims will be impaired by a burgeoning increase of frivolous prisoner complaints. As one means of alleviating this problem, THE CHIEF JUSTICE has suggested that federal and state authorities explore the possibility of instituting internal administrative procedures for disposition of inmate grievances.

Id. at 405 n.9.

More than twenty years later, "Congress enacted the Prison Litigation Reform Act of 1995 (PLRA) . . . in the wake of a sharp rise in prisoner litigation in the federal courts, . . . . designed to bring this litigation under control." Woodford v. Ngo, 548 U.S. 81, 84 (2006). A "centerpiece" of this attempt was to require prisoners to exhaust available administrative remedies. 42 U.S.C. § 1997e(a). Notably, courts have held that prisoners do not have a legal entitlement to file administrative remedies. See, e.g., Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

> To hold otherwise would be to bring virtually every unpopular decision by state actors within the scope of a cause of action for retaliation. This would pose particular problems in the context of prison administration. <u>Every act of discipline by prison officials is by definition "retaliatory" in the sense that it responds directly to prisoner misconduct.</u> The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties.

Id. (emphasis added).

2

Even if prisoners do not have a federal right to them, a practical result of Booker is that administrative remedies are more a springboard than a hurdle for federal litigation. A single written or verbal complaint ensures at least one actionable claim for whatever perceived "retaliatory" events occur in the routine day to day administration inside a prison. To state a claim, a plaintiff need only "demonstrate more than a sheer possibility that a defendant has acted unlawfully."[1] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Whether the alleged "retaliatory" act or omission occurred is not usually disputed as "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams, supura. What is often unresolved is the intent behind the act or omission, and a plaintiff "need only present evidence from which a jury might return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). From there, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255.

Even if, arguendo, every other claim is misjoined and frivolous, Plaintiff has pleaded retaliation with a "right to relief . . . asserted against the[] [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and with "question of law or fact common to all defendants[.]" Fed. R. Civ. P. 20(a)(2). The advice from Adams — to treat such claims with "skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions" — is of

---

[1] And, of course, courts are required to liberally construe a prisoner's pro se complaint, stopping short only of identifying claims never "fairly" presented. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). It is a more manageable exercise when a prisoner's pleading does not list every "retaliatory" comment, act, and omission in a minute by minute log from each day for several years and involving every correctional staffer at a prison.

3

little import because courts may not take that adverse perspective under Federal Rule of Civil Procedure 12(b)(6) or 56(a). See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."); Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) ("In evaluating a civil rights complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), we must be especially solicitous of the wrongs alleged. We must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." (internal quotation marks omitted)). Accordingly, I do not find Defendants' motion to dismiss or to strike persuasive, and it must be denied.

ENTER: This 25th day of September, 2018.

Jackson L. Kiser
Senior United States District Judge