IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MALCOLM MUHAMMAD, ) | |
| ) | Civil Case No. 7:17cv00481 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| L. J. FLEMING, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) |         United States District Judge |
| Defendants. ) | |

Malcolm Muhammad, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, against numerous Virginia Department of Corrections ("VDOC") and Wallens Ridge State Prison ("Wallens Ridge") employees.[1] This matter is before the court on the defendants' motion for summary judgment. (ECF No. 57.) The defendants argue that some of Muhammad's claims are barred by his failure to exhaust available administrative remedies.[2] Muhammad filed a response in opposition to their motion. After review of the parties' submissions, the court will grant the defendants' motion as to the unexhausted claims.

I.

In his amended complaint, Muhammad claims that defendants retaliated against him, failed to accommodate his religious rights, denied him certain procedural rights during

---

[1] Muhammad is currently incarcerated at Buckingham Correctional Center.

[2] The defendants also argue that other claims fail on their merits or are moot. But the court has stayed discovery pending resolution of the exhaustion defense. (ECF No. 62.). Therefore, the court will only address in this Memorandum Opinion those claims on which the defendants raise that defense. The court will deny the motion for summary judgment as to all other claims without prejudice to allow Muhammad the opportunity to engage in discovery.

disciplinary proceedings or when dealing with his property, and threw away his medically prescribed shoes. (ECF No. 21.) His claims span the entire time he was confined at Wallens Ridge—from October 23, 2015, to July 25, 2017—and are based on unrelated events involving different defendants. Muhammad asserts that these diverse claims are all linked by the allegedly retaliatory motives behind the defendants' challenged actions. He complains generally that, during "his complete housing at [Wallens Ridge], officials continued harassing him and threaten[ed] to retaliate against him daily, [and] he had at all times to be alert." (Am. Compl. ¶ 42 [ECF No. 21].)

Muhammad is an adherent of the Nation of Islam ("NOI") and calls himself a "Muslim under the teachings of the Honorable Elijah Muhammad." (*Id.* ¶ 78.) Among other religious rights claims, he asserts that his First Amendment right to freely exercise his religion and his Fourteenth Amendment equal protection rights were violated when he was denied a religious study guide class while others were allowed such religious programing.

## II.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, "[t]he court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023).[3] The court "may not weigh the evidence or make credibility determinations." *Harris*

---

[3] The court has omitted internal quotation marks, alterations, and/or citations here and throughout this opinion, unless otherwise noted.

*v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, a party must "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his or her favor. *Id.* Thus, the court's summary judgment inquiry is whether the evidence, taken in the light most favorable to the nonmoving party, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

A *pro se* litigant's verified complaint and amended complaint, or other verified submissions, must be considered as affidavits and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021). To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021).

### III.

The defendants contend that Muhammad's claims of retaliation, harassment, and that he was denied a NOI religious study guide class are barred because he failed to exhaust available administrative remedies. After review of the record, the court agrees.

The Prison Litigation Reform Act ("PLRA") provides in 42 U.S.C. § 1997e(a) that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). To comply with § 1997e(a), an inmate must properly follow each step of the established grievance procedure that the facility provides to inmates and meet all deadlines within that procedure before filing his § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 90–94 (2006). An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. *Id.* at 83–84.

The defendants bear the burden of proving the affirmative defense that Muhammad failed to properly exhaust available administrative remedies regarding his claims before filing suit. *Jones,* 549 U.S. at 216. If the defendants prove that he did not exhaust, he may yet escape summary judgment under § 1997e(a) by showing that the remedies under the established grievance procedures were not "available" to him. *Ross v. Blake*, 578 U.S. 632, 642−43 (2016) (noting that circumstances making prison grievance procedures unavailable "will not often arise"). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

VDOC Operating Procedure ("OP") § 866.1, "Offender Grievance Procedure," is the mechanism used to resolve inmate complaints. (*See generally* Aff. of B. Ravizee ¶¶ 4−9 & Ex. A, Jan. 24, 2019 [ECF No. 58-1]). OP 866.1 requires that, before submitting a formal grievance, an inmate must demonstrate that he has made a good-faith effort to informally resolve his complaint. He may do so by submitting an Informal Complaint form to the appropriate department head. Staff should respond in writing on the form within 15 days. If the inmate is dissatisfied with the response, he must submit a Regular Grievance on the issue within 30 days of the event about which he complains; he must attach the Informal Complaint and any supporting documentation to the Regular Grievance.

A Regular Grievance that meets the filing criteria under OP 866.1 will be logged into the computer database on the day it is received. If the Regular Grievance does not meet the filing requirements, a grievance official will complete the intake section on the back of the Regular Grievance form, mark the reason for the rejection (such raising more than one issue or constituting a request for services), and return the Regular Grievance to the inmate with instructions on how to correct and resubmit the form, if feasible. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman within five calendar days. But pursuing that intake appeal alone does not constitute exhaustion. Rather, to satisfy the exhaustion requirement, the grievance must be accepted into the Regular Grievance process and appealed through the highest available level of review.

Once a Regular Grievance is accepted for review, officials investigate the inmate's contentions, and the warden or his designee will issue a Level I written response. If the inmate is dissatisfied with that response, the inmate may appeal for Level II review. All accepted

Regular Grievances can receive these two levels of review, and some are eligible for a Level III review.

In support of the defendants' motion for summary judgment, Human Rights Advocate B. Ravizee submitted an affidavit and the relevant VDOC OP 866.1. As the Human Rights Advocate at Wallens Ridge, Ravizee is responsible for maintaining grievance files on all inmates at Wallens Ridge. Ravizee reviewed Muhammad's grievance file at Wallens Ridge for grievances related to his allegations in this lawsuit that staff retaliated against him and harassed him. Muhammad was incarcerated at WRSP from October 23, 2015, until July 25, 2017. She provides details about the only grievance documents she found complaining of retaliation or harassment.

Muhammad submitted an Informal Complaint (WRSP-16-INF-02635) dated August 21, 2016, alleging that false statements attributed to him were going to cause Officer Pauley and others to retaliate against him and harass him. Unit Manager Reynolds responded to Muhammad's Informal Complaint on August 26, 2016, and stated "This is the first that I have heard of this. You are not being accused of anything." (Ravizee Aff. ¶ 11.) Muhammad submitted a Regular Grievance that he dated August 27, 2016, complaining that the false statements would cause Officer Pauley and others to retaliate against him and harass him. Ravizee received Muhammad's grievance on August 29, 2016.

Ravizee rejected Muhammad's grievance at intake because he provided insufficient information. Muhammad did not provide the names of any inmates who had apparently reported false information about him, and Muhammad did not specify when he had heard about these reports from other offenders. Though Muhammad did state that on August 24,

2016, Pauley spoke to him at his cell door, the Regular Grievance does not provide enough information about the events leading up to this conversation. Moreover, the Informal Complaint on this issue was submitted on August 21, 2016, *before* Pauley allegedly spoke to Muhammad on August 24, 2016. The Regular Grievance also did not contain sufficient information about the actual incident being grieved, i.e., that other inmates were saying that Muhammad had filed a complaint against Pauley. (*Id.* ¶ 12.)

Having now reviewed the informal complaint that preceded this Regular Grievance, Ravizee adds that the grievance could have been rejected because the issue raised in it was not the same as the subject of the Informal Complaint. Muhammad's Informal Complaint complains about what other offenders were saying to him. His Regular Grievance recites Pauley's conversation with Muhammad. These separate incidents allegedly occurred on different dates and involved different people. (*Id.* ¶ 13.) Ravizee returned the grievance to Muhammad without assigning it a log number. (*Id.* ¶ 14.) Ravizee marked the box on the back of the form indicating that she could not accept the Regular Grievance for filing because contained insufficient information. Ravizee instructed Muhammad to provide that information "to the Grievance Office within 5 days before the grievance can be processed." (*Id.* ¶ 15 & Ex. B.) Ravizee also noted that Muhammad's complaint was based on hearsay and requested Muhammad to provide the Informal Complaint. Ravizee wrote "heresay [*sic*] IC [Informal Complaint] prior to C/O Pauley 8/24/16 cell visit." (*Id.* ¶ 15.) But Muhammad never provided any additional information. (*Id.* ¶ 15; Am. Compl. ¶¶ 51 & 54.) Instead of supplementing his original filing with the requested details so his grievance could be processed and investigated, Muhammad elected to appeal Ravizee's intake rejection, and Regional

Ombudsman Crowder upheld the intake decision on September 2, 2016. (Ravizee Aff. ¶ 16; Am. Compl. ¶ 53.)

Critically, at this point, September 2, 2016, Muhammad could have resubmitted the Regular Grievance with the requested information within the time limit under the grievance procedures. He did not submit another Regular Grievance on this issue, and the procedural time limits to do so are now long past. There is no further review of an intake decision. Moreover, the evidence conclusively establishes that Muhammad did not file any other Informal Complaint or Regular Grievance regarding alleged retaliation or harassment by Wallens Ridge Staff. Muhammad has provided no evidence to the contrary. Thus, Muhammad failed to exhaust the VDOC's administrative remedies concerning his claims of retaliation and harassment by Wallens Ridge staff.[4] Further, Muhammad does not contend that he was prevented from exhausting administrative remedies through no fault of his own.

Ravizee also reviewed Muhammad's Wallens Ridge grievance file for grievances related to his request for a NOI study guide class. On this issue, he submitted an Informal Complaint

---

[4] A review of OP 866.1, which is attached to Ravizee's affidavit, (ECF No. 58-1 at 7−19), explains complete exhaustion under that procedure:

> An offender meets the exhaustion of remedies requirement only when a Regular Grievance has been carried through the highest eligible level of appeal without satisfactory resolution of the issue.
>
> . . . . If a Regular Grievance does not meet the criteria for acceptance and review by the Regional Ombudsman does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria for acceptance. The exhaustion of remedies requirement will be met only when the Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue.

(OP 866.1 at 6.)

dated March 20, 2016, stating that the Fruit of Islam class is required for the NOI program and asking if the group could conduct this class. (Suppl. Aff. of B. Ravizee ¶ 5, Feb. 1, 2019 [ECF No. 58-2].) Unit Manager Reynolds responded on April 1, 2016, stating that religious programs had to be scheduled by the chaplain and a minimum number of inmates needed to sign up for a religious program before it could be established. (*Id.* ¶ 6.)

Muhammad submitted an Informal Complaint dated January 12, 2017, complaining that the Sunni Muslims had a study guide class, but that the NOI only had a public meeting and no study class. (*Id.* ¶ 7.) Chaplain Mitchell responded to this Informal Complaint on January 27, 2017, and told Muhammad that he needed to talk to the warden about another service. (*Id.* ¶ 8.) On February 2, 2017, Muhammad submitted a Regular Grievance complaining that he had written Chaplain Mitchell several times about a study guide class called Fruit of Islam, but Mitchell had failed to respond. Muhammad wrote that he was requesting to have a class like the other religious groups were. (*Id.* ¶ 9.) On February 3, 2017, Ravizee rejected this Regular Grievance at intake on the grounds that it was a request for services. Muhammad appealed the intake decision to the Regional Administrator, who affirmed Ravizee's decision on February 9, 2017. There is no further review of an intake decision. (*Id.* ¶ 12.)

Muhammad's Regular Grievance was not accepted during the intake process and did not satisfy the exhaustion requirement. Thus, he failed to exhaust the administrative remedies available to him regarding his complaint about a NOI study guide class. (*Id.* ¶ 13.) In fact, the evidence submitted by Muhammad in support of his claims confirms that he did not exhaust

administrative remedies as to this specific claim. Muhammad also does not allege that he was prevented from exhausting administrative remedies through no fault of his own.

Based on review of the parties' submissions, the court concludes that the defendants have easily met their burden of demonstrating that Muhammad failed to properly exhaust available administrative remedies regarding his retaliation and harassment claims and his NOI religious class claim before filing suit. *See Jones*, 549 U.S. at 216. The VDOC administrative remedies procedure requires properly submitting a Regular Grievance after attempting an informal resolution, having the Regular Grievance accepted at intake, and then pursuing it through the highest available level of appeal. Muhammad did not complete these requisite steps as to these claims.

Muhammad could have avoided summary judgment under § 1997e(a) if he had demonstrated that the grievance procedure was not available, but he has made no such showing. Therefore, the court will grant summary judgment for the defendants as to Muhammad's claims of retaliation and harassment and his claim that he was denied an NOI religious study class.[5]

## IV.

For the reasons stated, the court concludes that the defendants' summary judgment motion must be granted in part and dismissed without prejudice in part.

---

[5] Muhammad raised his claim about denial of the NOI study class as a religious rights claim and as an equal protection claim, given his contention that other religious groups had study classes. His failure to exhaust administrative remedies bars all aspects of this claim.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 30th day of September, 2023.

>  */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE