CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 23, 2024

LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MALCOLM MUHAMMAD, ) | |
| ) | |
| Plaintiff, ) | Case No. 7:17-cv-00481 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| L. J. FLEMING et al., ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Malcom Muhammad, a Virginia inmate proceeding *pro se*, filed this civil-rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.*, against numerous employees of the Virginia Department of Corrections ("VDOC") and Wallens Ridge State Prison ("Wallens Ridge"). (*See* Compl. [ECF No. 1]; Am. Compl. [ECF No. 21].) Defendants jointly filed a motion for summary judgment asking the Court to enter judgment in their favor on all of Plaintiff's claims against them. (*See* Defs.' Mot. Summ. J. [ECF No. 57]; Defs.' Mem. Supp. Summ. J. [ECF No. 58].) The Court granted Defendants' motion in part as to Plaintiff's retaliation and harassment claims and his claim that he was denied a Nation of Islam study class because Plaintiff had failed to exhaust available administrative remedies with regard to these claims. (*See* Mem. Op. [ECF No. 125]; Or. [ECF No. 126].) The Court denied Defendants' motion without prejudice with respect to Plaintiff's remaining claims. (*See* Or. 1.)

Plaintiff has filed a motion requesting reconsideration of the Court's ruling granting Defendants' motion for summary judgment in part. (Pl.'s Mot. [ECF No. 131].) For the following reasons, Plaintiff's motion will be denied.

## I.

Plaintiff filed this action seeking declaratory, injunctive, and monetary relief based on events that occurred while he was incarcerated at Wallens Ridge. (*See* Am. Comp. ¶¶ 1–95 [ECF No. 21].) Plaintiff asserts several claims against different groups of Defendants. (*See id.* ¶¶ 97–111.) Many of his claims stem from Defendants' failure to accommodate his preferred diet as a member of the Nation of Islam. (*See id.* ¶¶ 98–100.) First, Plaintiff claims that Defendants Fleming, Reynolds, and Elam violated his rights under the First, Eighth, and Fourteenth Amendments and RLUIPA by preventing him from accessing VDOC's "common fare" diet to follow his religious diet, allegedly in retaliation for prior complaints Plaintiff filed about his food options. (*See id.* ¶ 98.) Next, Plaintiff claims Defendants Combs, Broyles, Stallard, Gregg, and Ponton violated the First Amendment, Fourteenth Amendment, and RLUIPA by failing to provide him with an "adequate, nutritious and healthy diet." (*Id.* ¶ 99.) Third, Plaintiff claims Defendants Fleming, Broyles, Stallard, Gregg, and Elam violated the First Amendment, Fourteenth Amendment, and RLUIPA by interfering with his celebration of Ramadan and denying him meal accommodations related to his observance of that holiday. (*Id.* ¶ 100.)

In addition, Plaintiff asserts claims based on other alleged interferences with his religious exercise. (*See id.* ¶¶ 101, 104.) He claims Defendants Combs, Porchie, and Elam wrongfully confiscated his religious materials in violation of the First, Eighth, and Fourteenth Amendments and RLUIPA. (*Id.* ¶ 101.) He also claims Defendant Mitchell violated his Fourteenth Amendment, equal-protection rights by failing to provide a Nation of Islam study guide class when other religious groups were offered such classes. (*Id.* ¶ 104.) Plaintiff also

asserts claims under the First, Eighth, and Fourteenth Amendments and RLUIPA against Defendant Combs, Mitchell, and Manis based on their failure to provide him with a congregational prayer service during Eid-ul-Fitr. (*Id.* ¶ 105.)

Finally, Plaintiff asserts various general retaliation claims. (*See id.* ¶¶ 102–03, 106–08, 110–11.) He claims Defendant Pauley and Barnes falsified a misconduct charge against him in retaliation for Plaintiff's claims against Defendant Pauley. (*Id.* ¶ 102.) Plaintiff further claims that Defendant Ravizee generally retaliated against him and violated his constitutional rights—including by denying him access to the courts—and that Defendants Fleming, Williams, and Elam failed to provide the courts with monthly payments on his behalf. (*Id.* ¶¶ 103, 111.) He also claims Defendant Reynolds retaliated against him by failing to investigate his claim of harassment. (*Id.* ¶ 106.) He claims Defendants Fleming and Hensley retaliated by failing to review exculpatory evidence and allow him to call witnesses to refute a false misconduct charge. (*Id.* ¶ 107.) And he claims Defendant Phillips retaliated against him by disposing of Plaintiff's medical shoes and that Defendants Manis, Combs, and Elam retaliated by failing to review video footage of Defendant Phillips. (*Id.* ¶¶ 108, 110.)

Defendants jointly moved for summary judgment on all of Plaintiffs' claims against them. (*See* Defs.' Mot. Summ. J. [ECF No. 57].) Defendants argued, among other things, that Plaintiff had not exhausted his administrative remedies concerning his retaliation claims. (*See id.* at 28–30.) The Court agreed that Plaintiff had failed to show exhaustion and granted Defendants' motion in part as to the unexhausted claims. (*See* Mem. Op. at 4–10, Sept. 30, 2023 [ECF No. 125]; Order at 1, Sept. 20, 2023 [ECF No. 126].)

Plaintiff now claims the Court erred in dismissing his claims for failure to exhaust his administrative remedies and requests reconsideration of the Court's summary judgment decision. (*See* Pl.'s Mot. 1; Pl.'s Aff. ¶ 7 [ECF No. 131-1].) Plaintiff's motion is ripe for the Court's review.

## II.

Under Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Despite its broad language, the discretion afforded to district courts by this rule "is not limitless." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 256 (4th Cir. 2018) (quoting *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)). "[W]hile Rule 54(b) gives a district court discretion to revisit earlier rulings in the same case, such discretion is subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* at 257 (4th Cir. 2018) (citations and internal quotation marks omitted).

A district court may revise an interlocutory order under Rule 54(b) "under the same circumstances in which it may depart from the law of the case[.]" *Id.* (quoting *Carlson*, 856 F.3d at 325). Those circumstances are where (1) "substantially different evidence" is produced during litigation, (2) there has been "a change in applicable law," or (3) the court committed "clear error causing manifest injustice." *Id.*

"[A] basic aim of Rule 54(b) is to give district courts 'flexibility to revise' their rulings 'as the litigation develops and new facts or arguments come to light.'" *See Phoenix v. Amonette*,

95 F.4th 852, 857 (4th Cir. 2024) (quoting *Carlson*, 856 F.3d at 325). But courts should deny motions to reconsider summary judgment rulings which are "merely [] vessel[s] for the very evidence that was initially lacking in opposition to summary judgment." *Carlson*, 856 F.3d at 326 (affirming denial of motion for reconsideration where evidence relied upon "was available well before summary judgment briefing") (emphasis removed).

### III.

The Prison Litigation Reform Act of 1995 ("PLRA") requires inmates to exhaust all available remedies before filing suits challenging prison conditions. *Ramirez v. Collier*, 595 U.S. 411, 421 (2022). This requirement "gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched." *Moss v. Harwood*, 19 F.4th 614, 621 (4th Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). To properly exhaust administrative remedies, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" defined by the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). "And given the PLRA's 'mandatory language,' there is no room to excuse a failure to exhaust all available remedies, even to take into account 'special circumstances' that might otherwise justify noncompliance with procedural requirements." *Moss*, 19 F.4th at 621 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). Failure to exhaust is an affirmative defense under the PLRA. *Jones*, 549 U.S. at 216.

"[T]he only exception to the PLRA's exhaustion requirement is when an administrative remedy is not 'available.'" *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) (citing *Ross*, 578 U.S. at 642). "If an administrative remedy 'officially on the books' is not actually 'capable of use to obtain relief,' then the PLRA does not require exhaustion." *Moss*, 19 F.4th at 621

(quoting *Ross*, 578 U.S. at 643). An administrative remedy is "unavailable" when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates" (e.g., "if administrative officials have apparent authority, but decline ever to exercise it"), (2) it is "so opaque that it becomes, practically speaking, incapable of use" (e.g., where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"), or (3) "the prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" (e.g., where "officials misl[ead] or threate[n] individual inmates so as to prevent their use of otherwise proper procedures"). *Ross*, 578 U.S. at 643–44.

The Court summarized VDOC's grievance procedure in its prior Order:

> VDOC Operating Procedure ("OP") § 866.1, "Offender Grievance Procedure," is the mechanism used to resolve inmate complaints. (*See generally* Aff. of B. Ravizee ¶¶ 4−9 & Ex. A, Jan. 24, 2019 [ECF No. 58-1]). OP 866.1 requires that, before submitting a formal grievance, an inmate must demonstrate that he has made a good-faith effort to informally resolve his complaint. He may do so by submitting an Informal Complaint form to the appropriate department head. Staff should respond in writing on the form within 15 days. If the inmate is dissatisfied with the response, he must submit a Regular Grievance on the issue within 30 days of the event about which he complains; he must attach the Informal Complaint and any supporting documentation to the Regular Grievance.
>
> A Regular Grievance that meets the filing criteria under OP 866.1 will be logged into the computer database on the day it is received. If the Regular Grievance does not meet the filing requirements, a grievance official will complete the intake section on the back of the Regular Grievance form, mark the reason for the rejection (such raising more than one issue or constituting a request for services), and return the Regular Grievance to the inmate with instructions on how to correct and resubmit the form, if feasible. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman within five calendar days. But pursuing that intake appeal alone does not constitute exhaustion. Rather, to satisfy the exhaustion requirement, the grievance must be accepted into the Regular Grievance process and appealed through the highest available level of review.

> Once a Regular Grievance is accepted for review, officials investigate the inmate's contentions, and the warden or his designee will issue a Level I written response. If the inmate is dissatisfied with that response, the inmate may appeal for Level II review. All accepted Regular Grievances can receive these two levels of review, and some are eligible for a Level III review.

(Mem. Op. at 5–6.)[1]

Based on the parties' summary judgment submissions, the Court found that Defendants had "easily met their burden of demonstrating that [Plaintiff] failed to properly exhaust available administrative remedies regarding his retaliation and harassment claims and his [Nation of Islam] religious class claim before filing suit." (Mem. Op. at 10.) Plaintiff challenges the Court's decision, claiming he fully exhausted his administrative remedies as to some claims and administrative remedies were not "available" for others.

### A. Whether Plaintiff Exhausted Available Remedies

In an affidavit Plaintiff filed in support of his motion for reconsideration, Plaintiff claims he fully exhausted administrative remedies concerning the following claims:

- His retaliation claim against Defendants Fleming, Reynolds, and Elam based on his inability to access food to accommodate his religious diet;

- His retaliation claim against Defendants Combs, Porchie, and Elam based on the confiscation of his personal religious materials;

- His retaliation claim against Defendants Pauley and Barnes based on the falsified misconduct charge they filed against him;

- His retaliation claim against Defendants Fleming and Hensley based on the failure to review video evidence or allow Plaintiff to call witnesses to challenge his disciplinary charge; and

---

[1] Plaintiff stipulated that OP § 866.1 governs exhaustion in this case. (*See* Pl.'s Mem. Supp. Resp. to Summ. J. 17 [ECF No. 70-1]; Defs.' Mem. Supp. Summ. J. 18–19.)

- His retaliation claim against Defendants Manis, Combs, and Elam based on their failure to review video evidence of Defendant Phillips discarding Plaintiff's medical shoes.

(*See* Pl.'s Aff. ¶ 8; *see also* Defs.' Mem. Supp. Summ. J. at 2–3.) The Court will address Plaintiff's exhaustion efforts relating to each of these claims, in turn.

### *Claim Against Defendants Fleming, Reynolds, and Elam*

Plaintiff claims he exhausted available remedies for his claim against Defendants Fleming, Reynolds, and Elam by filing a grievance on May 10, 2016, received a Level I written response on June 7, 2016, appealed to the Regional office, and received a Level II response on July 1, 2026. (*See* Pl.'s Aff. ¶ 8; Pl.'s Mem. Supp. Resp. to Summ. J. at 24.)

The exhibits Plaintiff provided at summary judgment bear out Plaintiff's version of events. They establish that his common-fare diet privileges were suspended following a May 3, 2016 hearing before Defendant Reynolds, because Plaintiff ordered food items from the VDOC Quarterly Incentive Package that were not common-fare approved. (Exs. to Pl.'s Resp. to Summ. J. 1 [ECF No. 70-2].) Tahat hearing record reflects that, since this was Plaintiff's second offense, his common-fare privileges were suspended for one year. (*Id.*) Plaintiff did file a grievance concerning his suspension from common fare, which was received by the Wallens Ridge Grievance Department on May 11, 2016, and received an unfavorable Level I response on June 7, 2016. (*Id.* at 2–4.) Plaintiff appealed the Level I response the same day it was issued, but he received another unfavorable decision at Level II. (*Id.* at 4–6.)

Nothing in Plaintiff's grievances or appeals, however, referenced alleged retaliation by Fleming, Reynolds, or Elam.[2] (*See* Exs. to Pl.'s Resp. to Summ. J. 1–6.) Instead, they challenged only the grounds for his suspension and asked that his access to common fare be reinstated. (*See id.*) Thus, while Plaintiff may have exhausted remedies for other claims related to his common-fare suspension, there was no opportunity for VDOC to address his retaliation concerns before he filed this lawsuit. *Cf. Moore v. Bennette*, 517 F.3d 717, 729 (4th Cir. 2008) ("Because the grievances did nothing to alert the officials [of Plaintiff's particular complaint], they had no reason to investigate any further. Under these circumstances, allowing [Plaintiff] to bring suit for [that complaint] would not serve the purposes behind the exhaustion requirement."). Consequently, Plaintiff has not refuted Defendants' evidence that he failed to exhaust administrative remedies for his retaliation claim against Fleming, Reynolds, and Elam. *See Dorsey v. Shearin*, No. CV GLR-15-3645, 2018 WL 1570246, at *6 (D. Md. Mar. 30, 2018), *aff'd*, 737 F. App'x 176 (4th Cir. 2018) (concluding that, where the plaintiff's grievance addressed only his religious exercise concerns but did not allege he was punished "in retaliation for filing a grievance," he had "exhausted his administrative remedies for his First Amendment and RLUIPA claims, but not for his retaliation claim"); *Green v. Rubenstein*, 644 F. Supp. 2d 723, 746 (S.D.W. Va. 2009) (finding that, while the plaintiff had clearly "exhausted administrative remedies with respect to his Eighth Amendment claim," he had not exhausted

---

[2] "To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendants' conduct." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (citations and internal quotation marks omitted).

with respect to his retaliation claim because "[i]t [was] not evident that Plaintiff complained that he was not treated promptly for his dental problems in retaliation for his filing of a lawsuit against the Defendants"). For this reason, there is no basis for the Court to amend its award of summary judgment on that claim.

### *Claim Against Defendants Combs, Porchie, and Elam*

Next, Plaintiff contends he properly exhausted his administrative remedies against Defendants Combs, Porchie, and Elam by filing a grievance on November 2, 2016, appealing the Level I response on November 16, 2016, and receiving a Level II response on December 1, 2016. (Pl.'s Aff. ¶ 8; Pl.'s Mem. Supp. Resp. to Summ. J. at 24.) Plaintiff's exhibits support his summary of events. (*See* Exs. to Pl.'s Resp. to Summ. J. at 8–14.) But, once again, the grievance and appeal materials make no mention of retaliatory conduct by Combs, Porchie, or Elam. (*See id.*) Because his grievance concerned only the confiscation of his religious materials, Plaintiff did not exhaust available remedies related to any alleged retaliation by Defendants. *See Dorsey*, 2018 WL 1570246, at \*6; *Green*, 644 F. Supp. 2d at 746. The Court's summary judgment decision on these claims will stand as well.

### *Claim Against Defendants Pauley and Barnes*

Plaintiff also claims to have exhausted administrative remedies for his claim against Defendants Pauley and Barnes by filing an informal complaint on August 21, 206, filing a regular grievance on August 27, 2016, and appealing to the regional office on August 30, 2016. (Pl.'s Aff. ¶ 8; Pl.'s Mem. Supp. Resp. to Summ. J. at 24–25; *see also* Exs. to Pl.'s Resp. to Summ. J. at 15–33.) But as the Court explained in its summary judgment opinion, the grievance Plaintiff cites did not contain sufficient information about the actual incident being grieved to

put the reviewers on notice of his retaliation claims. (*See* Mem. Op. 6–8.) And Plaintiff has not pointed to any new evidence that was unavailable to the Court at summary judgment that would alter this finding. Consequently, Plaintiff has still not shown that he fully exhausted his retaliation claim against Pauley and Barnes, and the Court will not revise its summary judgment ruling regarding that claim.

### *Claim Against Defendants Fleming and Hensley*

Plaintiff similarly claims he exhausted administrative remedies for his retaliation claim against Defendants Fleming and Hensley, though not by informal complaint or formal grievance. (Pl.'s Aff. ¶ 8; Pl.'s Mem. Supp. Resp. to Summ. J. at 25.) Instead, he urges that he exhausted by requesting video footage on October 30, 2016, requesting witnesses on October 31, 2016, and appealing the denial of those requests to Defendant Fleming. (Pl.'s Mem. Supp. Resp. to Summ. J. 25; *see also* Exs. to Pl.'s Resp. to Summ. J. 34–36.) But simply filling out documentary-evidence and witness request forms does not amount to exhaustion under OP § 866.1—far from it. Because Plaintiff did not file and fully appeal a grievance concerning his claim against Fleming and Hensley, he did not properly exhaust that claim, and the Court correctly dismissed it on summary judgment.

### *Claim Against Defendants Manis, Combs, and Elam*

Lastly, Plaintiff contends he fully exhausted his retaliation claim against Defendants Manis, Combs, and Elam via informal complaint filed on July 26, 2017 (the day after he was transferred to another facility) and grievance filed on August 16, 2017. (Pl.'s Aff. ¶ 8; Pl.'s Mem. Supp. Resp. to Summ. J. at 25.) Plaintiff states he received a Level I response to his grievance (date unspecified) and a Level II response on October 30, 2017. (Pl.'s Mem. Supp.

Resp. to Summ. J. at 25.) He also claims he sent a certified letter to Defendant Combs on August 9, 2017, related to this claim. (*Id.*)

As with other claims, although Plaintiff appears to have exhausted remedies related to the actual confiscation of his shoes, none of Plaintiff's grievances or appeals mention retaliation by Manis, Combs, or Elam. Accordingly, Plaintiff thus did not properly exhaust administrative remedies regarding his *retaliation* claim against these Defendants. *See Dorsey*, 2018 WL 1570246, at *6; *Green*, 644 F. Supp. 2d at 746. The Court therefore declines to reconsider its decision granting summary judgment on Plaintiff's retaliation claim against Defendants Manis, Combs, and Elam.

## B. Whether Administrative Remedies Were Unavailable

Plaintiff also argues the Court erred by finding administrative remedies were available to him because Defendant Ravizee interfered with grievance procedures. (*See* Pl.'s Aff. ¶¶ 7, 10–11.)

First, Plaintiff claims Defendant Ravizee improperly rejected his grievance relating to his retaliation claim against Defendant Pauley. (*See id.* ¶ 10.) Plaintiff's grieved related to that claim states:

> My complaint is concerning C/O Pauley, telling several pod workers that I file[d] a complaint against him. I never filed a complaint against C/O Pauley, and his information came from his informant. I then filed a complaint of these false statements from him believing in a[n] offender and not reviewing any documents of these facts that he [is] alleging. On August 24, 2016, C/O Pauley[] came by at the cell and said, "I was told this, and it was written to Assistant Warden Combs, and he respond[ed] to my request of complaint." Mr. Combs[] ha[d] never receive[d] a request complaint of C/O Pauley. He then said to me, "[I]f I did writ[e] a complaint, he would find me somewhere else to live." This harassment will cause me to be reta[liated] by C/O Pauley, or workers, by [being] given false charges or whatever retaliation could be used. Unite Manager

>   Mr. Reynolds[] respond[ed] to my complaint but its clearly notice[able] that he is unaware of these false remakes.

(Exs. to Pl.'s Resp. to Summ. J. at 16.) At intake, Defendant Ravizee rejected Plaintiff's grievance for insufficient information, noting it was based on hearsay and that Plaintiff's Informal Complaint was filed prior to the August 24, 2016 incident described in the grievance. (*See id.* at 17; Mem. Op. 7.)

Plaintiff does not claim that he ever provided additional information to Defendant Ravizee. Instead, he contends that OP § 866.1 did not require him to identify the individuals referenced in his grievance. (Pl.'s Aff ¶ 10 (claiming "defendant Ravizee['s] reason[] for rejection was in error").) The Fourth Circuit has left open the possibility that improper rejection of a grievance at intake can render administrative remedies unavailable. *See Tory v. Davis*, No. 21-6649, 2022 WL 17716775, at *2 (4th Cir. Dec. 15, 2022); *see also Allen v. Shelton*, No. 7:22-cv-00408, 2023 WL 6389807, at *12 (W.D. Va. Sept. 29, 2023) ("If the grievance department rejects a grievance for plainly incorrect (and indeed irrational) reasons, the administrative process was not available to the inmate 'through no fault of his own.'") (quoting *Moore*, 517 F.3d at 725). But Plaintiff's disagreement with Defendant Ravizee's intake decision, alone, is not enough to overcome the exhaustion requirement. *See DeFour v. Webber*, No. 7:22CV00379, 2023 WL 6149279, at *9 (W.D. Va. Sept. 20, 2023) ("'[Plaintiff's] characterization of [Defendant's] grievance responses as obstructive or retaliatory does not demonstrate that the process itself is unavailable."). And insufficient information *is* an allowable basis for the rejection of a grievance under VDOC procedures. *See Custis v. Davis*, 851 F.3d 358, 360 (4th Cir. 2017) ("According to the Virginia Department of Corrections grievance form, grievances can be rejected upon intake for reasons such as alleging a non-

grievable issue, submitting a repetitive grievance, using vulgar or threatening language, or providing insufficient information."); *see also Crawley v. Kanode*, No. 7:19CV00474, 2023 WL 2755597, at *6 (W.D. Va. Apr. 3, 2023) (holding that administrative remedies were available despite rejection of grievances for insufficient information and failure to attach informal complaints to regular grievances); *Southerland v. Wright*, No. 2:16CV480, 2018 WL 11463656, at *14 (E.D. Va. Mar. 27, 2018) (finding no improper rejection, despite plaintiff's claims of retaliation, where plaintiff's grievances were rejected at intake for failing to indicate the date of the incident described and raising different issues in the informal complaint and regular grievance)

What's more, this rejection did not foreclose further review of Plaintiff's concerns. OP § 866.1 states in relevant part:

> If a Regular Grievance does not meet the criteria for acceptance and review by the Regional Ombudsman does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria for acceptance. The exhaustion of remedies requirement will be met only when the Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue.

(Mem. Op. at 8 n.4.) As the Court previously discussed in its summary judgment opinion, Plaintiff could have resubmitted his grievance with the requested information; he simply chose not to do so. (Mem. Op. 8.) And the numerous grievances, responses, and appeals in the record are strong evidence that administrative remedies were available to him at Wallens Ridge. *See DeFour*, 2023 WL 6149279, at *9. Thus, Plaintiff has not shown that Defendant Ravizee's rejection of his grievance at intake rendered administrative remedies unavailable.

Plaintiff's argument that Defendant Ravizee improperly rejected his grievance concerning Defendant Mitchell's denial of Nation of Islam study classes (*see* Pl.'s Aff ¶¶ 11–12) fails for the same reasons. In early 2017, Plaintiff filed a complaint and grievance concerning the lack of study-guide class. (*See* Exs. to Pl.'s Resp. to Summ. J. at 91–92.) In Plaintiff's grievance related to that claim, he stated, "I['m] requesting to have a Fruit of Islam study guide class as the other religious services are allowed to have." (*Id.* at 92.) Defendant Ravizee rejected Plaintiff's grievance at intake as a "request for services," and the decision was upheld on appeal. (*Id.* at 93.)

Plaintiff filed another complaint and grievance on this issue in March 2017. (*Id.* at 96–97.) His complaint stated, "I spoke with Chaplain Mitchell on 03/18/2016, concerning hav[ing] a second NOI FOI study guide class . . . The Fruit of Islam – FOI class is required for the NOI program so, I would like to know, can the NOI have this?" (*Id.* at 96.) The response to his complaint informed him that "[r]eligious programs are scheduled by the chaplain" and that "[t]here has to be a minimum amount of offenders to sign up for a religious program before they can be established." (*Id.*) Plaintiff's subsequent grievance explained, "My complaint was requesting for a second class for the Nation of Islam which would be the 'Fruit of Islam' study guide class." (*Id.* at 97.) Plaintiff's grievance further stated, "I would like for the warden to review this issue concerning giv[ing] the NOI a study class[.]" (*Id.*) Defendant Ravizee again rejected the grievance at intake as a request for services, and that rejection was upheld on appeal. (*Id.* at 98.)

Plaintiff argues that Defendant Ravizee's rejections were improper and retaliatory, but he does not offer any evidence to support his assertions. (Pl.'s Aff. ¶ 11.) He claims that his

complaints and grievances were not requests for services but were "First Amendment and RLUIPA claims to freely exercise his religion." (*Id.*) But Plaintiff's own words in his grievances belie that claim. There, he specifically asked for relief in the form of a study class. (*See* Exs. to Pl.'s Resp. to Summ. J 92, 97.) He did not reference the First Amendment, RLUIPA, or the Equal Protection Clause. (*See id.*) In his second appeal, Plaintiff even concedes, "Yes I['m] requesting for the Nation of Islam – NOI to be provided a study class that['s] called by the NOI, the Fruit of Islam- FOI class." (*Id.* at 99.) Consequently, it was not improper for Defendant Ravizee to deem Plaintiff's concerns "requests for services." And nothing in the record suggests that, if he had adequately raised First Amendment, Equal Protection, or RLUIPA concerns, those concerns would have been rejected as "requests for services." Therefore, Plaintiff has not shown that administrative remedies were unavailable to him for this claim.

### IV.

As set forth above and in the Court's summary judgment opinion, Plaintiff has not refuted Defendants' overwhelming evidence that he failed to exhaust available administrative remedies with regard to the claims discussed. The Court will therefore deny Plaintiff's motion for reconsideration.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 23rd day of September, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE