CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 30, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MALCOLM MUHAMMAD,                    )
                                     )
            Plaintiff,               )        Case No. 7:17-cv-00481
                                     )
v.                                   )        **MEMORANDUM OPINION**
                                     )
L. J. FLEMING et al.,                )        By:    Hon. Thomas T. Cullen
                                     )               United States District Judge
            Defendants.              )

Plaintiff Malcom Muhammad, a Virginia inmate proceeding *pro se*, filed this civil-rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.*, against numerous employees of the Virginia Department of Corrections ("VDOC") and Wallens Ridge State Prison ("WRSP"). (*See* Compl. [ECF No. 1]; Am. Compl. [ECF No. 21].) Defendants jointly filed a motion for summary judgment asking the court to enter judgment in their favor on all of Plaintiff's claims against them. (*See* Defs.' Mot. Summ. J. [ECF No. 57]; Defs.' Mem. Supp. Summ. J. [ECF No. 58].) The court granted Defendants' motion as to Plaintiff's retaliation and harassment claims and his claim that he was denied a Nation of Islam study class, finding Plaintiff had failed to exhaust available administrative remedies with regard to these claims. (*See* Mem. Op. [ECF No. 125]; Or. [ECF No. 126].) The court denied Defendants' motion without prejudice with respect to Plaintiff's remaining claims. (*See* Or. 1.)

Now before the court are Defendants' motions for summary judgment on those remaining claims. (Defs.' Mots. for Summ. J. [ECF Nos. 181, 183].)[1] For the following reasons, the court will grant Defendants' motion in part and deny them in part.

## I.

Plaintiff, an adherent of the Nation of Islam ("NOI"), was confined at WRSP from October 23, 2015, through July 25, 2017. (Am. Compl. ¶ 78; Aff. of C. Manis ¶ 4 [ECF No. 182-1].) Plaintiff's claims stem from allegations that, while he was incarcerated at WRSP, Defendants failed to accommodate his religious beliefs, retaliated against him, denied him certain procedural rights during disciplinary hearings and while handling his property, and threw away his medically prescribed shoes. (*See id.* ¶ 1–111.) His remaining claims span the entire length of time he was confined at WRSP and can be generally conceived of in the following categories: (i) claims related to the exercise of Plaintiff's religion, including the availability of a suitable religious diet; (ii) claims related to the failure to pay Plaintiff's monthly court fees; (iii) claims related to the confiscation of Plaintiff's medical shoes; and (iv) claims related to the failure to investigate and/or supervise the actions of other corrections officers. (*See id.*) The parties have offered the following evidence to support or refute Plaintiff's claims.

---

[1] Counsel for Defendants mistakenly left out Defendant C/O Phillips from the list of moving Defendants in their first motion for summary judgment. (*See* ECF No. 183, at 1.) The second motion for summary judgment, filed on behalf of Phillips, relies on and incorporates all the arguments set forth in support of the other Defendants' motion for summary judgment. (*See id.*) Accordingly, for all intents and purposes, Defendants have filed a single joint motion for summary judgment on all of Plaintiff's remaining claims.

### A. Alleged Interference with Plaintiff's Religious Exercise

   a.   <u>Plaintiff's Preferred Religious Diet</u>

WRSP offers a "Common Fare" diet for inmates who have specialized dietary needs based on their religious beliefs. (Aff. of N. Gregg ¶ 6 [ECF No. 182-3].) The Common Fare diet is designed to accommodate all known religious dietary restrictions, including those associated with the Muslim faith. (*Id.*) No pork or pork derivatives are used in Common Fare foods. (*Id.*) All foods purchased and used for Common Fare meals, aside from fruits and vegetables,[2] are consistent with or certified kosher. (*Id.* ¶ 7.)

On October 31, 2015, Defendants Broyles and Stallard placed Plaintiff on the Common Fare diet. (Aff. of M. Muhammad ¶ 3 [ECF No. 190-2].) Plaintiff claims that, after being placed on Common Fare, he was served foods from the regular menu. (*Id.*) The Common Fare menu offers some food items that are not on the regular menu, including tuna cakes and a soy rice mix. (Aff. of N. Gregg ¶ 9.) But other items, such as beans, vegetables, peanut butter, juice, and other beverages, are the same as those served on the regular menu because these regular menu items are kosher and meet the standards for Common Fare. (*Id.* ¶ 10.) All Common Fare trays—including those containing the same food items as on the regular menu—are prepared on separate equipment and stored in separate areas to comply with kosher dietary requirements. (*Id.* ¶¶ 10–11.)

Plaintiff also claims that, after being placed on the Common Fare menu, he was served fried foods. (Aff. of M. Muhammad ¶ 3.) Foods on the Common Fare menu are planned so

---

[2] N. Gregg, the Eastern Regional Dietician for the Virginia Department of Corrections ("VDOC"), declares that it is his understanding that fruits and vegetables are halal without any certification. (Aff. of N. Gregg ¶ 8.)

that they are nutritionally adequate, including the way the foods are prepared. (*Id.* ¶ 13.) In his affidavit, VDOC's Eastern Regional Dietician N. Gregg avers that no foods on the Common Fare diet are deep fried; they are all sauteed, grilled, or baked. (Aff. of N. Gregg ¶ 12.) Gregg stated that the tuna cakes offered on the Common Fare menus are baked or grilled and, though oil may be used in their preparation, they are never submerged in oil. (*Id.*) Gregg also explains that vegetables served to Common Fare recipients are cooked but are not cooked in a way that would cause nutritional loss. (*Id.* ¶ 13.)

Plaintiff also contends that the Common Fare menu during Ramadan included eggs, though Plaintiff, apparently, does not eat eggs. (Aff. of M. Muhammad ¶ 3.) The Common Fare menu does offer eggs several times per week, including during Ramadan. (Aff. of N. Gregg. ¶ 16.) No substitution for eggs is offered unless an inmate is allergic to eggs and is medically advised not to consume them. (*Id.*) Gregg stated that he is unaware of any religious dietary restriction concerning the consumption of eggs. (*Id.*) Nevertheless, any inmate who does not wish to eat eggs may refrain from doing so and can supplement any protein or caloric loss from forgoing the eggs with halal foods from the commissary. (*Id.* ¶¶ 16, 19.)

On May 9, 2016, Plaintiff was suspended from Common Fare because he purchased commissary foods—canned salmon, raspberry shortbread cookies, and Cheez-its—that were not approved for the Common Fare diet. (*See* Pl.'s Resp. in Opp'n to Summ. J. Ex. 3 [ECF No. 190-4].) Plaintiff filed a Regular Grievance concerning his suspension, complaining that his family ordered the food items for him, he did not know that they were not permitted to order him those foods, and that none of the foods contain pork and thus do not violate *his* religious dietary restrictions. (*Id.*) The Level I reviewer found Plaintiff's grievance was unfounded,

- 4 -

noting that these items were not kosher and that it was Plaintiff's responsibility to inform his family which items complied with the Common Fare diet. (*Id.*) Plaintiff appealed, arguing that he is Muslim, not Jewish, and that eating non-kosher foods does not violate his religious beliefs. (*Id.*) Regional Administrator Marcus Elam upheld the Level I decision following at his Level II review. (*Id.*)

b. <u>Confiscation of Plaintiff's Religious Materials</u>

On October 25, 2016, Plaintiff temporarily moved to housing in the medical department to accommodate a scheduled doctor's appointment. (Aff. of D. Murphy ¶ 4 [ECF No. 70-6].) Plaintiff was told to pack up his property and present it to Correctional Officer ("C/O") Barnes and C/O Pauley to be inventoried. (*Id.* ¶ 5.) While Plaintiff's property was sitting in front of Barnes and Pauley to be inventoried, Inmate D. Murphy saw other inmates steal some of Plaintiff's personal items. (*Id.* ¶ 6.) While Barnes and Pauley were performing their inventory, Murphy saw them throw away Plaintiff's copies of the religious newspaper, the "Final Call," and other food and hygiene items. (*Id.* ¶¶ 8–9.) Once Barnes and Pauley were finished inventorying Plaintiff's property, C/O Middleton collected Plaintiff's property. (*Id.* ¶ 7.) Murphy and other inmates went to the trash can and collected some of the items that had been discarded. (*Id.* ¶ 9; *see also* Aff. of M. Muhammad ¶ 6.) Murphy took the discarded Final Call papers and returned them to Plaintiff when he returned from medical on October 28, 2016. (Aff. of D. Murphy ¶ 10.) Other inmates also returned some of the discarded items to Plaintiff. (*Id.*) Murphy told Plaintiff that Pauley and Barnes had thrown the items away. (*Id.*) Later, Pauley came and took the Final Calls from Plaintiff. (*Id.* ¶ 11.)

On October 28, 2016, Plaintiff met with Barnes, Pauley, and Defendant Sgt. Porchie to discuss his possession of the Final Call newspapers. (Aff. of W. Hensley ¶ 4 & Encl. A [ECF No. 182-6].) After the officers questioned Plaintiff about the newspapers, Plaintiff said, "Fuck you all, that's fucking bullshit." (*Id.*) Plaintiff was then given a disciplinary charge for "vulgar or insolent language or gestures directed toward and employee." (*Id.*)

That same day, Plaintiff submitted an Informal Complaint stating that his personal property had been inventoried by C/O Barnes, Pauley, and Middleton on October 25, 2016, before he was removed from general population. After returning to general population on October 28, 2016, Plaintiff realized that several items were missing, including his copies of the Final Call and several food items. (Aff. of C. Manis ¶ 20 & Encl. I.) He also stated that the food items were in the possession of other inmates, some of whom admitted to Porchie, Barnes, and Pauley that they had found Plaintiff's property in common areas around the prison. (*Id.*) He complained that the officer had failed to inventory all of his property and that several items were destroyed. (*Id.*)

On November 2, 2016, Inmate Hearings Officer W. Hensley held a disciplinary hearing on Plaintiff's charge for vulgar or insolent language and found him guilty of the offense. (Aff. of W. Hensley ¶¶ 1, 4.) During the hearing, Plaintiff asked Hensley to review surveillance video showing Pauley and Barnes's actions from October 25, 2016. (*Id.* ¶ 5.) Hensley did not admit the video evidence, however, ruling that it was not relevant to Plaintiff's vulgar-language charge as the charge had nothing to do with the allegedly stolen property. (*Id.*)

Also on November 2, 2016, while still awaiting a response to his complaint, Plaintiff filed a Regular Grievance on November 2, 2016, complaining that his religious materials—

specifically his Final Calls—were confiscated on October 28, 2016. (Aff. of C. Manis ¶ 23 & Encl. J.) He grieved that he was told he could have only one newspaper despite the Final Calls being the only materials he has to study his religion. (*Id.*)

On November 7, 2016, Unit Manager Reynolds responded to Plaintiff's Informal Complaint. (*Id.* ¶ 20 & Encl. I.) Reynolds indicated that Plaintiff had received everything that was in his personal property and that he had signed for his property after returning to general population. (*Id.* ¶ 20 & Encl. I.)

On November 14, 2014, Plaintiff received a response to his November 2 grievance, deeming the grievance unfounded and stating that, per prison policy, Plaintiff was allowed to possess only one newspaper and notified Plaintiff that he had 30 days to dispose of any excess newspapers. (*Id.* ¶ 23 & Encl. J.) Plaintiff appealed the Level I response to Regional Administrator Marcus Elam, who upheld the unfounded decision at the Level II review. (*Id.* ¶ 24 & Encl. J.)

On November 15, 2016, Plaintiff submitted another Regular Grievance repeating the concerns outlined in his Informal Complaint. (*Id.* ¶ 21 & Encl. I.) Plaintiff received a response to that grievance on December 7, 2016, stating that Reynolds had spoken with the officers involved and they said Plaintiff's property was inventoried per procedure and denied destroying anything. (*Id.*) The response further noted that Plaintiff signed a Special Status Inventory Form on October 25, 2016, confirming that the inventory was correct, and signed another form on October 28, 2016, upon receiving his personal property. (*Id.*) The Level I response therefore deemed Plaintiff's grievance unfounded and declined to reimburse any

alleged losses. (*Id.*) Plaintiff appealed this decision to Level II, and Regional Administrator Marcus Elam upheld the Level I decision. (*Id.* ¶ 22 & Encl. I.)

      c.  <u>Celebration of Religious Holidays</u>

On or about March 9, 2017, Chief of Corrections Operations A. David Robinson distributed a memo regarding the 2017 observance of Ramadan, Nation of Islam and Morrish Science Temple of America Month of Fasting, and the Eid-ul-Fitr Feast. (Aff. of C. Manis ¶ 15 & Encl. G.) The memo noted that Ramadan and the Month of Fasting would begin the evening of Friday May 26, 2017, but that the first Ramadan/Month of Fasting meal would occur the morning of Saturday, May 27, 2017. (*Id.*) The memo further noted that Ramadan would continue for 29 calendar days through sundown on Saturday, June 24, 2017. (*Id.*) Robinson's memo also stated that there would be a special prayer service on Sunday June 25, 2017, the day after Ramadan/the Month of Fasting. (*Id.* ¶ 16 & Encl. G.) It further indicated that the feast of Eid-ul-Fitr would be observed as either a lunch or evening meal within three days after the conclusion of Ramadan and the Month of Fasting. (*Id.*) This meant the feast that year was scheduled for either Sunday June 25, Monday June 26, or Tuesday June 27. (*Id.*)

On June 27, 2017, Plaintiff prepared an Informal Complaint claiming that he was denied an Eid-ul-Fitr prayer service celebrating the 30-day fast of Ramadan. (*Id.* ¶ 17 & Encl. H.) Plaintiff's complaint was received on June 28, 2018, and WRSP Chaplain Mitchell responded to it on July 10, 2017, stating there was a "Security Issue under MASOA." (*Id.*)

Plaintiff submitted a Regular Grievance concerning this issue on July 12, 2017. (*Id.* ¶ 18 & Encl. H.) The response to Plaintiff's grievance stated that an investigation into Plaintiff's complaint revealed that a prayer service was offered the Sunday before the feast and that

Plaintiff's grievance was therefore unfounded. (*Id.*) Plaintiff appealed this Level I decision on August 22, 2017. (*Id.* ¶ 19 & Encl. H.) Regional Administrator Marcus Elam upheld the decision at Level II. (*Id.*)

### B. Failure to Provide Monthly Court Payments on Plaintiff's Behalf

Defendant M. Williams served as a Fiscal Technician in WRSP's business office while Plaintiff was incarcerated at WRSP. (Aff. of M. Williams ¶ 1 [ECF No. 182-5].) Part of William's role was to process transactions on inmate accounts, including withdrawals to pay court filing fees. (*Id.* ¶ 4.) On February 10, 2016, Plaintiff sent an offender request to Williams out of concern that his payments were not being properly made to the court. (*See* Pl.'s Resp. in Opp'n to Summ. J. Ex. 12(i), at 1 [ECF No. 70-2].) Williams responded on February 12, 2016, that Plaintiff's filing fee payment had been processed and sent to the court. (*Id.*) Plaintiff sent another request about his court payments to Williams on April 21, 2016, asking which case number his payments were being sent toward. (*Id.* at 2.) Williams responded on April 27, 2016, stating that his payment was "being sent to 1:14-cv-00662." (*Id.*)

On May 24, 2016, Plaintiff wrote a letter to the court inquiring about his payments and asking that the court contact the WRSP business office to ensure payments were being made properly. (*Id.* at 3–4.) On June 9, 2016, Plaintiff filed an Informal Complaint related to the court-payment issue. (*Id.* at 5.) Williams responded to the complaint, stating that she had approved the court checks and send court payments for all inmates at once. (*Id.*) Plaintiff filed a Regular Grievance, and his grievance was deemed unfounded at both Level I and Level II based on Williams's report that she set aside 20% of all Plaintiff's deposits to be paid toward his filing fee and processed and sent checks to the clerk of court. (*Id.* at 12–13.)

Williams now admits that, prior to January 2018, she mistakenly sent court payments for all inmates on a quarterly basis rather than on a monthly basis in accordance with 28 U.S.C. § 1915(b). (Aff. of M. Williams ¶¶ 6–7.) Consequently, Williams unintentionally failed to pay Plaintiff's court fees some months. (*See id.*; Aff. of M. Muhammad ¶ 4.)

### C. Failure to Investigate Alleged Harassment by C/O Pauley

On August 24, 2016, C/O Pauley told Plaintiff that he heard Plaintiff had written a complaint about him and threatened Plaintiff that, if he did it again, Pauley would have him put in segregation. (Aff. of D. Murphy ¶ 3.) Plaintiff claims that Reynolds failed to investigate Pauley's threats. (*See* Am. Compl. ¶¶ 87, 106.)

### D. Confiscation of Plaintiff's Medical Shoes

On July 25, 2017, Plaintiff was transferred from WRSP to Sussex I State Prison ("SISP"). (Aff. of M. Muhammad ¶ 7.) While preparing for the transfer, Plaintiff had on his "medical shoes," which had been provided by a doctor. (*Id.*) Defendant Lt. Light asked Plaintiff whether his shoes were medically issued, and Plaintiff told him that they were and that he was to wear them at all times. (*Id.*) Light attempted to contact the WRSP medical department to asked about the shoes but did not receive a call back until after the transport bus had arrived. (*Id.*)

That day, Plaintiff and several other offenders, including inmate Tron Seaborn, had to "dress out" before being transferred. (Aff. of T. Seaborn ¶ 3 [ECF No. 70-4].) Seaborn finished dressing before some of the other inmates and was waiting in the hallway with C/O Phillips, the property officer, while the other inmates readied themselves for the transfer. (*Id.*) While Plaintiff was dressing out, C/O Rich ordered Plaintiff to remove his medical shoes and

told him he would get them back after he arrived at SISP. (Aff. of M. Muhammad ¶ 7.) Plaintiff

complied, and Rich exited the dressing room carrying Plaintiff's shoes. (*Id.*; Aff. of T. Seaborn

¶ 4.) Rich asked Phillips to place Plaintiff's shoes inside a property box in the hallway. (*Id.*)

Phillips took the shoes, but told Rich, "No, he's no longer our inmate." (*Id.* ¶ 5.) Phillips then

threw Plaintiff's shoes in the trash and made a joke. (*Id.*) Light was present and smiled. (*Id.*)

Inmate R. Redman was also present and saw Phillips throw Plaintiff's shoes in the trash. (Aff.

of R. Redman ¶¶ 3–4 [ECF No. 70-5].) Plaintiff claims that he suffered foot injuries at SISP

because he did not have his medical shoes. (Aff. of M. Muhammad ¶ 7.)

The day after Plaintiff transferred to SISP, he submitted an informal complaint,

complaining that WRSP staff had thrown away his medical shoes prior to transport and that

Plaintiff now had to wear "state shoes" until he could order another pair. (*Id.* ¶ 6 & Encl. A.)

The complaint was received by the WRSP grievance department on August 1, 2017. (*Id.*) C/O

Phillips responded on August 8, 2017, stating:

> On the day your property was packed up to be sent with you, you
> were told all medical items were to be turned in to the medical
> nurse that day during pill pass so that [the] medical department
> [could] send the items with your medical folder. You are not
> allowed to wear/have any items outside of policy unless they are
> life-sustaining.

(*Id.*)

On August 16, 2017, Plaintiff filed a formal grievance concerning this issue, asking that

WRSP pay for his lost shoes. (*Id.* ¶ 7 & Encl. B.) Defendant Manis, who became the warden

at WRSP in the final month of Plaintiff's incarceration at WRSP, performed the Level I review

of Plaintiff's grievance. (*Id.* ¶¶ 5, 8 & Encl. C.) Following an investigation, Manis concluded

that Plaintiff's grievance was founded and informed him that he would be reimbursed $34.90

for the cost of the shoes. (*Id.* ¶ 8 & Encl. C.)

Plaintiff appealed Manis's Level I decision to Regional Administrator Marcus Elam.

(*Id.* ¶ 9.) Elam performed a Level II review of Plaintiff's grievance and responded on October

30, 2017, indicating that Plaintiff had been reimbursed for the cost of the shoes. (*Id.*) Plaintiff's

Offender Monthly Trust Statements for October 2017 and November 2017 confirm that he

received a refund in the amount of $34.90 from Wallens Ridge. (*Id.* ¶ 10 & Encl. D.) Plaintiff's

trust statements further show that SISP processed the $34.90 credit on November 9, 2017,

and placed that amount into Plaintiff's spending account at SISP. (*Id.* ¶ 11 & Encl. E.)

### E. Procedural History

Plaintiff filed this action seeking declaratory, injunctive, and monetary relief based on

events that occurred while he was incarcerated at WRSP. (*See* Am. Comp. ¶¶ 1–95.) Plaintiff

asserts several claims against different groups of Defendants (*see id.* ¶¶ 97–111), and the

lengthy nature of Plaintiff's pleadings and the somewhat complex procedural history in this

action have further complicated the issues. After extensively reviewing the docket and

pleadings, the court finds that the following claims and issues remain for adjudication:

### I. Claims Related to the Revocation of Plaintiff's Access to the Common Fare Diet[3]

    a. <u>First Amendment Free Exercise Claim</u> against Defendants Fleming, Reynolds, and Elam

    b. <u>Eighth Amendment Deliberate Indifference Claim</u> against Defendants Fleming, Reynolds, and Elam

---

[3] Am. Compl. ¶¶ 81, 98.

    c. <u>Fourteenth Amendment Due Process Claim</u> against Defendants Fleming, Reynolds, and Elam

    d. <u>RLUIPA Claim</u> against Defendants Fleming, Reynolds, and Elam

**II. Claims Related to the Failure to Provide an "Adequate Nutritious and Healthy Diet"[4]**

    a. <u>First Amendment Free Exercise Claim</u> against Defendants Combs, Broyles, Ponton, Gregg, and Stallard

    b. <u>Fourteenth Amendment Due Process Claim</u> against Defendants Combs, Broyles, Ponton, Gregg, and Stallard

    c. <u>RLUIPA Claim</u> against Defendants Combs, Broyles, Ponton, Gregg, and Stallard

**III. Claims Related to the Failure to Provide Congregational Prayer Service for Eid-ul-Fitr[5]**

    a. <u>First Amendment Free Exercise Claim</u> against Defendants Combs, Mitchell, Elam, and Manis

    b. <u>Eighth Amendment Deliberate Indifference Claim</u> against Defendants Combs, Mitchell, Elam, and Manis

    c. <u>Fourteenth Amendment Due Process Claim</u> against Defendants Combs, Mitchell, Elam, and Manis

    d. <u>RLUIPA Claim</u> against Defendants Combs, Mitchell, Elam, and Manis

**IV. Claims Related to Interference with Ramadan Celebration[6]**

    a. <u>First Amendment Free Exercise Claim</u> against Defendants Fleming, Elam, Broyles, Gregg, and Stallard

    b. <u>Fourteenth Amendment Due Process Claim</u> against Defendants Fleming, Elam, Broyles, Gregg, and Stallard

    c. <u>RLUIPA Claim</u> against Defendants Fleming, Elam, Broyles, Gregg, and Stallard

---

[4] Am. Compl. ¶¶ 82–83, 99.

[5] Am. Compl. ¶¶ 84, 94, 105.

[6] Am. Compl. ¶¶ 86, 100.

V.    **Claims Related to the Confiscation of Plaintiff's Religious Materials[7]**

    a.   <u>First Amendment Free Exercise Claim</u> against Defendants Combs, Elam, and Porchie

    b.   <u>Eighth Amendment Deliberate Indifference Claim</u> against Defendants Combs, Elam, and Porchie

    c.   <u>Fourteenth Amendment Due Process Claim</u> against Defendants Combs, Elam, and Porchie

    d.   <u>RLUIPA Claim</u> against Defendants Combs, Elam, and Porchie

VI.   **Claims Related to the Failure to Investigate Harassment and Threats by Defendant Pauley[8]**

    a.   <u>Fourteenth Amendment Due Process Claim</u> against Defendant Reynolds

VII.  **Claims Related to the Confiscation of Plaintiff's Medical Shoes[9]**

    a.   <u>Eighth Amendment Deliberate Indifference Claim</u> against Defendant Phillips

    b.   <u>Fourteenth Amendment Due Process Claim</u> against Defendant Phillips

VIII. **Claims Related to the Failure to Supervise Defendant Philips[10]**

    a.   <u>Eighth Amendment Supervisory Liability Claim</u> against Defendant Light

    b.   <u>Fourteenth Amendment Due Process Claim</u> against Defendant Light

IX.   **Claims Related to the Failure to Review Video Evidence of Defendant Philips[11]**

    a.   <u>Fourteenth Amendment Due Process Claim</u> against Defendants Combs, Elam, and Manis

---

[7] Am. Compl. ¶¶ 88, 101.
[8] Am. Compl. ¶¶ 87, 106.
[9] Am. Compl. ¶¶ 91, 108.
[10] Am. Compl. ¶¶ 92, 109.
[11] Am. Compl. ¶ 110.

**X.    Claims Related to the Failure to Provide the Court with Monthly Payments[12]**

      a.  <u>Fourteenth Amendment Due Process Claim</u> against Defendants Fleming, Elam, and Williams.

The court's review reveals no further pending claims against Defendants Barnes, Pauley, Hensley, or Ravizee. The court will therefore terminate these individuals as Defendants in this action and deny Defendants' motion for summary judgment (ECF No. 181) as moot regarding these Defendants.

Defendants Fleming, Manis, Reynolds, Elam, Williams, Broyles, Ponton, Gregg, Stallard, Mitchell, Porchie, Light, Combs, and Phillips now move for summary judgment on all of Plaintiff's remaining claims. (*See* Defs.' Mot. for Summ. J.; Def. Phillips's Mot. for Summ. J.) Defendants' motions are ripe for review.

## II.

Summary judgment under Rule 56 "allows a case to be resolved before and without a trial when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 352 (4th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The court's role in ruling on such a motion is not to assess the truth of any fact alleged or to weigh facts, as would a jury in finding facts, but only to determine whether facts are disputed *and* whether the disputed facts are material." *Id.* (citations omitted).

In deciding a motion for summary judgment, "the court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen*

---

[12] Am. Compl. ¶¶ 85, 111.

*v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate if there are genuine disputes of material fact and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but is appropriate "when the evidence is so one-sided that one party must prevail as a matter of law." *Tekmen*, 55 F.4th at 959.

## III.

Plaintiff brings his claims under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. Claims under § 1983 have two essential elements: (1) "[a] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States," and (2) the plaintiff "must show that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

Plaintiff claims Defendants, all acting under color of state law, violated his rights under the First Amendment, Eighth Amendment, Fourteenth Amendment, and RLUIPA.

### A. First Amendment Free-Exercise Claims

The Free Exercise Clause of the First Amendment "requires prison officials to reasonably accommodate an inmate's exercise of sincerely held religious beliefs." *Greenhill v. Clarke*, 944 F.3d 243, 250 (4th Cir. 2019) (citations omitted). "In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Id.* (quoting *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018)).

Plaintiff brings free-exercise claims against: (i) Defendants Fleming, Reynolds, and Elam based on his suspension from the Common Fare diet; (ii) Defendants Combs, Broyles, Ponton, Gregg, and Stallard for failure to provide him with a nutritious and healthy diet while he was on Common Fare; (iii) Defendants Combs, Mitchell, Elam, and Manis for failure to provide a congregational prayer service for Eid-ul-Fitr; (iv) Defendants Fleming, Elam, Broyles, Gregg, and Stallard for interference with his celebration of Ramadan; and (v) Defendants Combs, Elam, and Porchie for confiscation of his religious materials.

i. <u>Common Fare Claims</u>

"Under the Free Exercise Clause, a prisoner has a clearly established right to a diet consistent with his religious principles." *Atkins v. Md. Div. of Corr.*, No. CIV.A. PWG-14-3312, 2015 WL 5124103, at *8 (D. Md. Aug. 28, 2015) (citing *Wall v. Wade,* 741 F.3d 492, 498–500 (4th Cir. 2014)). This right includes access to a "nutritionally adequate" diet that is consistent

with an inmate's religious beliefs. *Coleman v. Jones*, No. 20-7382, 2022 WL 2188402, at *5 (4th Cir. June 17, 2022) (citations omitted).

Plaintiff's only challenge to the nutritional adequacy of WRSP's Common Fare is based on his own affidavit and grievances documents accusing Defendants of serving him fried foods and foods from the master menu. While there is disagreement among the parties over whether the tuna cakes offered on the Common Fare menu are, in fact, fried, Defendants have offered sufficient evidence that the Common Fare diet takes into account the health and wellness of the inmates eating it and that it is designed to meet or exceed the nutritional needs of inmates. (*See* Aff. of N. Gregg ¶¶ 12–19.) Plaintiff's assertion that he was occasionally offered quasi-fried food on the Common Fare diet (which Defendants dispute) does not, without more, establish that the diet as a whole was not nutritionally adequate or imposed a substantial burden on the exercise of Plaintiff's religions beliefs.

Additionally, the fact that the Common Fare menu includes some of the same foods as the regular menu does not place a substantial burden on Plaintiff's ability to practice his religion. Defendants have offered evidence, from the regional dietician for VDOC, showing that Common Fare foods are prepared and stored separately to accommodate the recipients' religious practices. (*Id.* ¶¶ 10–11.) Plaintiff has not even alleged, much less shown, that consuming any of the foods appearing on both the regular menu and Common Fare menu is in violation of his religious beliefs. Therefore, the court will grant Defendants' motion for summary judgment on any First Amendment claims resting on the contents of the Common Fare menu while Plaintiff ate from it.

Plaintiff's claim that his suspension from Common Fare for receiving non-kosher commissary items, the consumption of which did not violate his personal religious beliefs as a member of the NOI, is different. The Fourth Circuit has held that "inmates are entitled to religious dietary accommodations absent a legitimate reason to the contrary." *Wall*, 741 F.3d at 502. And the court agrees with Plaintiff that there is a genuine dispute of material fact as to whether preventing Plaintiff from receiving meals that comply with his religious beliefs for receiving commissary foods that, while not halal, do not compromise Plaintiff's NOI religious values, places a substantial burden on his ability to freely exercise his religion.

Although "free exercise restrictions that are 'reasonably adapted to achieving a legitimate penological objective' are permissible," *Wall*, 741 F.3d at 499 (quoting *Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006)), to establish entitlement to summary judgment, Defendants must first "identify the institutional need for substantially burdening the prisoner's rights," *Carter v. Fleming*, 879 F.3d 132, 141 (4th Cir. 2018). *See, e.g.*, *Hayes v. Boone*, No. 3:12CV427, 2014 WL 1930494, at *3 (E.D. Va. May 14, 2014) (four-day period without access to Common Fare due to influx of temporarily placed offenders was rationally related to legitimate penological interests where prison officials lacked the supplies to offer Common Fare meals to all recipients during that period and offering meals to some inmates but other others could have created animosity and threatened intentional security). Here, Defendants do not proffer any specific penological interest to justify revoking Plaintiff's access to a diet that accommodates his religious beliefs. (*See* Memo. in Supp. of Defs.' Mot. for Summ. J. 8–9.) Instead, they state that they are entitled to summary judgment because Plaintiff "has presented no evidence that any of the decisions were not reasonably related to penological interests," insisting that

"Plaintiff must carry this burden, not Defendants." (*Id.* at 8 (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).)

*Overton* is not a free-exercise case. In *Overton*, the Supreme Court assessed whether prison regulations restricting prisoner's visitation rights violated the inmate's First Amendment right to intimate association, finding that, regardless of whether incarcerated individuals maintain a right to intimate association, the visitation policies were not unconstitutional because they bore a rational relation to legitimate penological interests. 539 U.S. 132. There, the plaintiffs challenged the constitutionality of the regulations themselves, and the court explained that the burden was "not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Id.* (citations omitted). But Free-Exercise cases show that, once a plaintiff has created a genuine dispute of material fact concerning whether a governmental action substantially burdens his religious exercise, the burden shifts to the defendants to prove that the burden was supported by a legitimate penological interest in order to obtain summary judgment. *See Carter*, 879 F.3d at 139–40 ("Even when a prison policy or practice substantially burdens a prisoner's religious exercise, it will not violate the First Amendment *if the government can demonstrate* that it is 'reasonably related to legitimate penological interests.'" (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987) (emphasis added)); *see also id.* at 140 ("It is not our role to evaluate possible objectives that defendants have not presented to the district court.").

Here, as in *Carter*, the court finds that Plaintiff can point to a factual dispute as to whether his religious exercise was substantially burdened based on the revocation of his Common Fare privileges, and Defendants have offered no evidence showing this burden was justified by a legitimate penological interest. Therefore, Defendants are not entitled to

summary judgment on Plaintiff's First Amendment claims regarding his suspension from Common Fare.

    ii.    <u>Interference with Ramadan Celebration</u>

Plaintiff also asserts that, while on Common Fare, he was served eggs during Ramadan and alleges that, per the VDOC Food Service Manual, he should have been offered an alternative of cheese. (*See* Am. Compl. ¶ 86; Aff. of M. Muhammad ¶ 5.) Defendants offer evidence that the consumption of eggs does not violate any known religious beliefs of NOI inmates and that no substitution for eggs is offered absent an egg allergy. (Aff. of N. Gregg ¶ 16.) Plaintiff does not offer any evidence that being offered eggs during Ramadan substantially burdened the exercise of his religion. Instead, he argues that he does not eat eggs, apparently due to a personal preference, and that Defendants should have offered Plaintiff cheese instead of eggs when requested. (*See* Memo. in Supp. of Pl.'s Resp. in Opp'n to Summ. J. 12 [ECF No. 190-3].) But "[c]ourts have repeatedly held that inmates may be entitled to meals that meet their religious beliefs, but they are not entitled to have those meals conform to their personal preferences." *James v. Va. Dep't of Corr.*, No. 7:16CV00442, 2018 WL 1528217, at *8 (W.D. Va. Mar. 28, 2018) (collecting cases). Further, Defendants presented evidence that, on days Plaintiff forwent eggs, he could supplement his meals with religiously compliant foods from the commissary. *Cf. Hoye v. Clarke*, No. 7:14CV00124, 2015 WL 3407609, at *5 n.1 (W.D. Va. May 27, 2015), *aff'd*, 628 F. App'x 199 (4th Cir. 2016) (noting the "mere inconvenience of purchasing snacks in the commissary" did not impose a substantial burden on the exercise of his religion).

Because Plaintiff's aversion to eggs was a personal preference rather than a religious obligation, and because he had available alternatives to the consumption of eggs on the Common Fare diet, no reasonable jury could find that Plaintiff suffered a constitutional violation based on Defendants' failure to substitute cheese in place of eggs during Ramadan. The court will therefore grant summary judgment on Plaintiff's claims related to the alleged interference with his celebration of Ramadan.

      iii.   Failure to Offer a Congregational Eid-ul-Fitr Prayer Service

Plaintiff's next First Amendment claim concerns Defendants Combs, Mitchell, Elam, and Manis's liability for the alleged failure to offer a congregational prayer service for Eid-ul-Fitr. (*See* Am. Compl. ¶¶ 84, 94, 105.) Defendants have offered evidence that a congregational prayer service was held on Sunday, June 24, 2017. (Aff. of C. Manis ¶¶ 15–18 & Encls. H & G.) This service was listed in the March 9, 2017 memo outlining the 2017 observance of Ramadan and Eid-ul-Fitr. (*See id.*) The memo also noted that, that year, Ramadan would end the night of Saturday, June 24, 2017, and that the Eid-ul-Fitr feast meal would be held either on Sunday June 25, Monday June 26, or Tuesday June 27.

Plaintiff argues that holding the prayer service "prior" to the feast burdened the free exercise of his religion but offers no explanation or evidence as to why holding the prayer service at a different time than the feast meal substantially burdened his free exercise. (*See* Memo. in Supp. of Pl.'s Resp. in Opp'n to Summ. J. 13.) "A practice or policy places a substantial burden on a person's religious exercise when it 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Carter*, 879 F.3d at 139 (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). Here, Plaintiff offers no

substantive evidence showing that holding the prayer service on Sunday, June 25, 2017, prevented him from attending or violated religious beliefs. Thus, no reasonable jury could find that Defendants violated his First Amendment free-exercise rights by holding the service on that day, and the court will grant summary judgment on this claim.

iv.    Confiscation of Religious Materials

Plaintiff's final free-exercise claim concerns the confiscation of his Final Call newspapers on October 25, 2016, and October 28, 2016. (*See* Am. Compl. ¶¶ 88, 101.) Plaintiff alleges that, by limiting the number of newspapers he could have at one time and throwing away excess papers, Defendants Combs, Elam, and Porchie substantially burdened his religious exercise. (*See id.*) But Plaintiff has not offered any evidence that limiting his access to a single Final Call newspaper at a time "put substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas*, 450 U.S. at 718.

Though Plaintiff refers to these papers as religious study materials, the samples of the Final Call that Plaintiff attaches to his summary judgment response show that the paper reports on national and global news. (*See* Pl.'s Resp. in Opp'n to Summ. J. Exs. at 1 (showing articles covering the Israeli-Palestinian conflict and "Public School Setbacks").) And Plaintiff admits that, despite his allegations that the Final Calls were "the only religious materials he had," he was permitted to purchase and possess other religious texts. (Memo. in Supp. of Pl.'s Resp. to Summ. J. 13.) He further admits that he was permitted to receive the Final Call on a weekly basis. (*Id.*) Plaintiff has not shown that, while obviously not his preference, the limited access to his Final Call newspapers caused him to modify his behavior in any way that compromised his religious beliefs. Because Plaintiff's evidence does not raise any genuine

dispute of material fact as to whether the confiscation of his newspaper articles violated his
First Amendment free-exercise rights, the court will grant summary judgment for Defendants
on this claim.

### B. RLUIPA Claims

Under RLUIPA,

> No government shall impose a substantial burden on the
> religious exercise of a person residing in or confined to an
> institution, . . . even if the burden results from a rule of general
> applicability, unless the government demonstrates that
> imposition of the burden on that person —
>
>> (1) is in furtherance of a compelling governmental
>> interest; and
>>
>> (2) is the least restrictive means of furthering that
>> compelling governmental interest.

42 U.S.C. § 2000cc-1(a). To establish a claim under RLUIPA, an inmate "bears the initial
burden of establishing that a prison policy substantially burdens his or her ability to practice
in accordance with a sincerely held religious belief." *Greenhill*, 944 F.3d at 250 (citing *Incumaa v.
Stirling*, 791 F.3d 517, 525 (4th Cir. 2015)). The term "substantial burden" has the same
meaning in the RLUIPA context as it does in the First Amendment context. *Id.* (citing *Lovelace
v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)). Thus, "a substantial burden is one that puts substantial
pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a
person to choose between following the precepts of her religion and forfeiting governmental
benefits, on the one hand, and abandoning the precepts of her religion on the other hand."
*Id.*

Plaintiff's RLUIPA claims are identical to Plaintiff's free-exercise claims. Accordingly, the merits of those claims rise and fall for the same reasons as Plaintiff's First Amendment claims. However, "Congress has not authorized damages claims against state officials under [RLUIPA]." *Atkins*, 2015 WL 5124103, at *9 (D. Md. Aug. 28, 2015) (collecting cases); *see Gentry v. Robinson*, 837 F. App'x 952, 957 (4th Cir. 2020) (absent a showing that the defendants' actions affected interstate commerce, plaintiff may not pursue RLUIPA claims for damages against stated officials). Here, Plaintiff's claims are against VDOC officials and therefore invokes the spending clause rather than the interstate commerce clause. *See Rendelman v. Rouse*, 569 F.3d 182, 184, 189 (4th Cir. 2009). RLUIPA does not authorize a claim for damages against officials sued in their individual capacities under these circumstances. *Id.* And RLUIPA also does not authorize claims for damages against officials sued in their official capacities at all. *Id.* at 187. Thus, as a matter of law, Plaintiff cannot succeed on any claim for damages under RLUIPA.

Further, "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman*, 569 F.3d at 186 (collecting cases). It is undisputed that Plaintiff was transferred from WRSP on July 25, 2017, and that he is no longer incarcerated there. Plaintiff's transfer has rendered moot his claims for injunctive relief under RLUIPA.[13] *See id.* Accordingly, the court will award summary judgment in Defendants' favor on all of Plaintiff's RLUIPA claims.

---

[13] To the extent Plaintiff argues that his RLUIPA claims for injunctive relief against Defendants are not moot because, even after his transfer, he remained suspended from Common Fare (*see* Memo. in Supp. of Pl.'s Resp. in Opp'n to Summ. J. 11–12), any such injunctive claims ought to be brought against the officials at his current facility who could facilitate his reinstatement on Common Fare, not against Defendants who now lack the authority to do so.

### C. Eighth Amendment Claims

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Id.* (citations omitted). "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015) (citing *Farmer*, 511 U.S. at 832).

Plaintiff's Eighth Amendment claims are largely repetitive of his religious-exercise claims. He claims that: (i) Fleming, Reynolds, and Elam violated the Eighth Amendment by offering fried foods and regular-menu items while on the Common Fare menu and by suspending him from Common Fare; (ii) Combs, Mitchell, Elam, and Manis violated the Eighth Amendment by holding the congregational prayer service for Eid-ul-Fitr at a separate time from the feast meal; and (iii) Defendants Combs, Elam, and Porchie violated the Eighth Amendment by confiscating his Final Calls. He also claims that Defendant Phillips violated the Eighth Amendment by discarding Plaintiff's medical shoes and that Defendant Light violated the Eighth Amendment by failing to prevent Phillips from throwing out his shoes.

### i. Claims Related to the Common Fare Diet

As has been explained to Plaintiff in another civil action, "[i]t is well-established that inmates must be provided with nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consumer it." *Muhammad v. Mathena*, No. 7:14-CV-00134, 2015 WL 300363, at *2

(W.D. Va. Jan. 22, 2015), *aff'd*, 610 F. App'x 264 (4th Cir. 2015) (quoting *Shrader v. White,* 761 F.2d 975, 986 (4th Cir. 1985)). While allegations that a plaintiff has received inadequate food service while in prison can support § 1983 under some circumstances, "isolated instances of spoiled food or occasional and short-lived problems with food service are insufficient to state a cognizable claim under the Eighth Amendment." *Id.* (collecting cases). Rather, to demonstrate an Eighth Amendment violation, Plaintiff must establish that (1) "he suffered an objective, 'serious deprivation of a basic human need,'" (2) that he experienced "either a serious physical or emotional injury or exposure to a substantial risk of such harm resulting from the alleged condition," and (3) that defendants were "deliberately indifferent to the alleged condition." *Muhammad*, 2015 WL 300363, at *2 (citing *Williams v. Griffin,* 952 F.2d 820, 824 (4th Cir. 1991); *Helling v. McKinney,* 509 U.S. 25, 33–34 (1993); *Farmer*, 511 U.S. 825, 837).

The undisputed evidence underlying the food-related claims conclusively establishes that Plaintiff did not suffer a serious deprivation of a basic human need. As the court already found, Defendants' evidence shows that the food Plaintiff received on the Common Fare diet was nutritionally adequate and that Plaintiff had the opportunity to supplement his diet with foods from the commissary as needed. And, concerning his claims that his suspension from Common Fare constituted "cruel and unusual punishment," Plaintiff has merely alleged, without evidentiary support, that he "was forced to consume other foods" inconsistent with his NOI beliefs. (Memo. in Supp. of Pl.'s Resp. in Opp'n to Summ. J. 12.) But Plaintiff has not proffered what foods he was made to eat; whether he could have chosen to abstain from eating those foods; or what percentage of foods on the regular menu he could not eat. Without such evidence, no reasonable jury could find that Plaintiff suffered a "serious deprivation of a basic

human need." Accordingly, the court will grant summary judgment in Defendants' favor on all food-related Eighth Amendment claims.

    ii.   <u>Claims Related to the Eid-ul-Fitr Prayer Service</u>

Plaintiff raised an Eighth Amendment claim concerning the Eid-ul-Fitr prayer service. But Defendants have shown that WRSP did offer a congregational prayer service in recognition of Eid-ul-Fitr on Sunday June, 25, 2017, the day after Ramadan ended. No reasonable jury would find that holding the service on that day constituted a serious deprivation of Plaintiff's basic human needs or otherwise constituted "cruel and unusual punishment." The court will therefore award summary judgment for Defendants on this claim as well.

    iii.   <u>Claims Related to the Confiscation of Plaintiff's Religious Newspapers</u>

Plaintiff next claims that Combs, Elam, and Porchie violated the Eighth Amendment in connection with the confiscation of Plaintiff's Final Call newspapers.

"In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citations and internal quotation marks omitted). Although the deprivation was undoubtedly frustrating or inconvenient, Plaintiff offers no evidence showing that the confiscation of his excess newspapers was so extreme as to cause serious harm. *Cf. Slocumb v. Wood*, No. CIV.A. 9:13-1671-BHH, 2014 WL 5474611, at *13

(D.S.C. Oct. 28, 2014) (declining to grant summary judgment absent "some actual evidence showing that the conditions under which Plaintiff is specifically being held are so deplorable as to be deemed cruel and unusual punishment"). As the court previously noted, Plaintiff was permitted to receive the papers on a weekly basis and read them at his leisure until the next paper arrived.

"[A]n inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, '[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Fletcher v. Braxton*, No. CIV.A. 7:04CV00374, 2005 WL 1654518, at *4 (W.D. Va. July 12, 2005) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). Nothing in the record creates a genuine disputes of material fact concerning whether Defendants violated the Eighth Amendment by enforcing prison policy and limiting him to possessing only a single newspaper at a time. The court will therefore grant summary judgment for Defendants on this claim.

 iv. Claims Relating to the Confiscation of Plaintiff's Medical Shoes

Plaintiff claims that Defendant Phillips violated Plaintiff's Eighth Amendment rights by discarding his medical shoes before his transfer to SISP on July 25, 2017. The court construes this claim as one for deliberate indifference to his medical needs.

"Because 'adequate . . . medical care' is a basic condition of humane confinement, a prison official's 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) (quoting *Farmer*, 511 U.S. at 832). To establish a

claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a prisoner must allege facts sufficient to show that (1) the deprivation was sufficiently serious and (2) the prison officials acted with a sufficiently culpable state of mind toward the prisoner's medical needs. *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). To satisfy the second prong, the plaintiff must allege that the official (a) had "actual knowledge of the risk of harm to the inmate" and (b) "recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." *Id.* (citations omitted). Put simply, a defendant "acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Gordon v. Schilling*, 937 F.3d 348, 357 (4th Cir. 2019) (citing *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018)) And although the defendant need not act with "actual purposive intent," "mere negligence" is not enough. *Pfaller*, 55 F.4th at 445 (citation omitted).

Even assuming that the deprivation caused by the loss of Plaintiff's medical shoes was sufficiently serious, nothing in the record demonstrates that Phillips had actual knowledge of any risk of harm to Plaintiff from the loss of his medical shoes and did in fact recognize that his actions were insignificant to mitigate such a risk. Plaintiff claims he told Light and Rich that the shoes were medically prescribed but does not offer any evidence showing Phillips knew the shoes were medically prescribed or that not having them would risk substantial harm for Plaintiff. Absent such evidence, no reasonably jury would find that Phillips was deliberately indifference toward Plaintiff's medical needs in violation of the Eighth Amendment. *See Gordon*, 937 F.3d at 357. The court will therefore award summary judgment in Phillips's favor on this claim.

Plaintiff also brings an Eighth Amendment claim against Defendant Light based on his failure to prevent Phillips from taking his shoes. Plaintiff frames this claim as one that Light "failed to supervise" Phillips. "Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Johnson v. Robinette*, 105 F.4th 99, 123 (4th Cir. 2024) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). To prove a claim based on supervisory liability, the plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (quoting *Shaw*, 12 F.3d at 799). But Plaintiff has not established a deliberate-indifference claim against Phillips, nor has he offered any evidence indicating that Light was Phillips's supervisor. Therefore, Plaintiff cannot rely on supervisory liability to establish a claim against Light.

To the extent Plaintiff's claim is based on Light's failure to intervene to prevent the loss of Plaintiff's medical shoes, that claim also fails as a matter of law. Prison officials can be responsible for failing to intervene to protect the constitutional rights of inmates under a theory of bystander liability. *See id.* at 123–24 (citing *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). To establish bystander liability, the plaintiff must show that the officer: "(1) kn[ew] that a fellow officer [wa]s violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act." *Id.* (quoting *Randall*, 302 F.3d at 204).

Again, because Plaintiff has not offered evidence creating a genuine dispute as to whether Phillips violated Plaintiff's Eighth Amendment rights, he cannot show that Light knew Phillips's conduct was unconstitutional and yet failed to act. And though Light asked Plaintiff whether his shoes were medically necessary while preparing for the transfer, Plaintiff admits that Light never received any confirmation from the medical department about whether the shoes were prescribed by a medical provider until after Plaintiff was transferred out. (Aff. of M. Muhammad ¶ 7.) The only other evidence Plaintiff offers concerning Light is Plaintiff's own testimony and that of fellow inmates stating that Phillips threw the shoes away and "started laughing in the presen[ce] of Defendant Lt. Light" and that Light "smiled." (*Id.*; Aff. of T. Seaborn ¶ 5; Aff. of R. Redman ¶ 4.) None of this evidence shows that Light was deliberately indifferent to a known medical need or that he chose not to act in the face of a known constitutional violation. Therefore, no reasonable jury could find that Light violated Plaintiff's Eighth Amendment rights by failing to prevent the loss of Plaintiff's shoes. Accordingly, the court will grant summary judgment on Plaintiff's Eighth Amendment claim against Light.

### D. Fourteenth Amendment Due Process Claims

The Due Process Clause of the Fourteenth Amendment protects against deprivations of life, liberty, or property without due process of law. U.S. Const. amend. XIV. To establish a § 1983 claim based on a violation of procedural due process, a plaintiff must "(1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Prisoners can have liberty interests in certain conditions of their confinement whose deprivation triggers

procedural due-process protections. *Id.* (citing *Meachum v. Fano*, 427 U.S. 215 (1976); *Wolff v. McDonnell*, 418 U.S. 539 (1974)); *see Thorpe v. Clarke*, 37 F.4th 926, 942 (4th Cir. 2022) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, but a prisoner's liberty does not disappear entirely."). A due-process claim in the prisoner context requires showing (1) the "denial of an interest that can arise either from the Constitution itself or from state law policies" and (2) that "this denial imposed on him an atypical and significant hardship in relation to the ordinary incidents of prison life." *Prieto*, 780 F.3d at 251 (citations omitted).

     i.   <u>Food-Related Claims</u>

Plaintiff brings Fourteenth Amendment due process claims against Defendants Combs, Broyles, Ponton, Gregg, and Stallard for failing to provide an adequate nutritious and healthy diet that conformed with his religious requirements and against Defendants Fleming, Elam, Broyles, Gregg, and Stallard for interfering with his celebration of Ramadan by failing to substitute eggs for cheese. (*See* Am. Compl. ¶¶ 82–83, 86, 99–100.)

Some courts have recognized that prison policies can create liberty interests in receiving certain meals by restricting an inmate's food options as punishment for misconduct. *See, e.g.*, *United States v. State of Mich.*, 680 F. Supp. 270, 277 (W.D. Mich. 1988) (finding prisoners in segregation had a liberty interest in not being given "food loaf" diet in place of regular prison meals without due process of law). But Plaintiff has not identified a constitutionally protected liberty or property interest, as a general matter, in a religiously conforming diet that also meets his personal food preferences. *Cf. Burgin v. Nix*, 899 F.2d 733, 734–35 (8th Cir. 1990) (finding no constitutional right for inmates to receive a "non-sacked" meal versus a "sacked" meal

when both meal offerings were determined to be nutritionally adequate). The fact that a VDOC food service manual mentions the availability of certain substitutes does not, without more, create a liberty or property interest such that every inmate is entitled to those substitutes and must have due process before they are denied. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 79 (4th Cir. 2016) (interests triggering due process "must be created or defined by an independent source" and "an abstract need or desire" for a certain benefit is insufficient to create such an interest). Defendants have shown that egg substitutions, in particular, were only available for inmates with egg allergies. (*See* Aff. of N. Gregg ¶16.) Because Plaintiff did not have a constitutionally protected liberty or property interest in receiving substitute food items whenever eggs were served, he cannot establish that he was denied due process of law. As with Plaintiff's First Amendment claim based on these allegations, no reasonable jury could find that Defendants committed a constitutional violation by occasionally offering eggs, foods from the regular menu, or, to the extent the court reads the evidence in Plaintiff's favor on summary judgment, fried foods. Therefore, the court will grant summary judgment for Defendants on these claims.

Plaintiff also brings a procedural due process claims based on his suspension from Connon Fare against Fleming, Reynolds, and Elam, all of whom appear to have been involved in rendering or upholding the decision to suspend Plaintiff from that meal plan. (*See* Am. Compl. ¶¶ 81, 98; *see also* Pl.'s Resp. in Opp'n to Summ. J. Ex. 3, at 1–6 [ECF No. 70-2] (indicating that Reynolds conducted his initial suspension hearing, Fleming[14] denied his

---

[14] The signature on the Level I response to Plaintiff's grievance is difficult to read, no printed name is supplied, and no party confirms whether Fleming actually performed this level of review. (*See* Pl.'s Resp. in Opp'n to Summ. J. Ex. 3, at 3.) But construing the facts in favor on Plaintiff as the non-movant, the court finds that the

grievance at Level I, and Elam upheld the denial at Level II).) Defendants do not argue that Plaintiff lacks a liberty interest in a diet that complied with his religion based on his First Amendment right to free exercise. *Cf. Hammer v. Keeling*, No. 1:14CV8 JCC/MSN, 2015 WL 925880, at *8 (E.D. Va. Mar. 3, 2015), *aff'd sub nom. Hammer v. Hobbs*, 613 F. App'x 224 (4th Cir. 2015); *Baines v. Hicks*, No. 3:14CV616, 2016 WL 7380558, at *16 (E.D. Va. Dec. 20, 2016). Consequently, the relevant question for purposes of summary judgment is whether Plaintiff received constitutionally adequate process before being suspended from Common Fare.

Plaintiff does not appear to argue that the procedures employed were inadequate but that the ultimate decision to terminate his access to Common Fare was wrong. *Cf. Hammer*, 2015 WL 925880, at *8. In similar cases, courts in this Circuit found no due process violation where the plaintiff violated the terms of the Common Fare agreement before his suspension. For example, in *Hammer v. Keeling*, the district court held that a prisoner who smuggled food out of the dining hall in violation of the Common Fare agreement received constitutionally adequate process before his Common Fare privileges were revoked because it was determined by all reviewing officials that the prisoner had violated the Common Fare agreement. 2015 WL 925880, at *8–9. The court reasoned that, because the plaintiff presented no evidence demonstrating that the reviewers' decisions "were made arbitrarily or without articulable basis" or that any error "was the result of intentional misconduct," the plaintiff had not established any due process violation based on his suspension. *Id.* at *9. Similarly in *Baines v. Hicks*, the court found no due process violation stemming from the plaintiff's Common Fare suspension

---

signature conceivably belongs to Defendant Flemming, who was Warden of WRSP at the time Plaintiff filed his grievance. (*See* Aff. of L.J. Flemming ¶ 1 [ECF No. 182-2].)

where there was "substantial evidence" to support the hearing officer's finding that the plaintiff's conduct violated the Common Fare agreement. 2016 WL 7380558, at *18.

Here, Plaintiff's grievance documents indicate that the terms of the Common Fare agreement are governed by VDOC Operating Procedure § 830.1 and "Memorandum #002-2016." (*See* Pl.'s Resp. in Opp'n to Summ. J. Ex. 3.) But neither party has offered copies of these documents as evidence to support or oppose summary judgment. Accordingly, the court cannot find that, as a matter of law, Plaintiff violated the terms of the Common Fare agreement before he was suspended from Common Fare. Therefore, the court must deny summary judgment as to the due process claims against Reynolds, Fleming, and Elam concerning Plaintiff's suspension from Common Fare.

  ii. <u>Claims Concerning the Eid-ul-Fitr Prayer Service</u>

Plaintiff raises due-process claims against Defendants Combs, Mitchell, Elam, and Manis based on the scheduling of the Eid-ul-Fitr prayer service. (Am. Compl. ¶¶ 84, 94, 105.) But because Plaintiff offers no proof that he had any protected liberty interest in attending a congregational prayer service on a particular day and time, Defendants are entitled to judgment as a matter of law on this claim.

  iii. <u>Claims Related to the Confiscation of Plaintiff's Newspapers</u>

Plaintiff also brings a due-process claim against Defendants Combs, Elam, and Porchie based on the confiscation of his Final Call newspapers. Defendants argue that Plaintiff cannot establish a due process claim on this basis because he had a meaningful post-deprivation remedy to address the loss. (Memo. in Supp. of Defs.' Mot. for Summ. J. 10.) They urge that, although Plaintiff was not found to be in violation of policy and no reimbursement was made

for the loss of the papers, the post-deprivation remedy was nevertheless available to correct any improper decision to confiscate.

Defendants are correct that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post[-]deprivation remedy."). Courts in this circuit have recognized that the VDOC's grievance procedure provides an adequate post-deprivation remedy to address inmate claims for property loss. *See Cooper v. Wright*, No. 7:15CV00572, 2016 WL 7165994, at *4 (W.D. Va. Dec. 6, 2016) (granting summary judgment for defendants on due-process claims where the plaintiff had a post-deprivation remedy through the prison's grievance procedures and also possessed remedies under Virginia state law to seek reimbursement for the value of the lost items); *Phelps v. Anderson & Langford*, 700 F.2d 147, 149 (4th Cir. 1983) (holding the Viriginia prison grievance procedure in effect at the time of property confiscation "provided an adequate post deprivation remedy" for plaintiff); *cf. Wilson v. United States*, 332 F.R.D. 505, 527 (S.D.W. Va. 2019) ("The ability to file state court claims for conversion and the availability of inmate grievance processes have been held to constitute meaningful post-deprivation remedies.") (collecting cases); *Patterson v. McCall*, No. CV51404428JMCKDW, 2016 WL 492148, at *5 (D.S.C. Jan. 19, 2016), *report and recommendation adopted*, No. 5:14-CV-04428-JMC, 2016 WL 469607 (D.S.C. Feb. 8, 2016) (finding that, because the South Carolina Inmate Grievance procedure itself complied with due process, the

procedure provided an adequate post-deprivation remedy to address inmate claims for deprivation of property).

Because it is undisputed that Plaintiff had a meaningful post-deprivation remedy available to him, his due-process claims based on the confiscation of his newspapers fails as a matter of law. *See Hudson*, 468 U.S. at 533. Consequently, the court will award summary judgment for Defendants on this claim.

### iv. Claims Related to the Confiscation of Plaintiff's Medical Shoes

Plaintiff also claims that the manner in which Phillips discarded his medical shoes—and Light's failure to prevent the loss—violated his due-process rights under the Fourteenth Amendment. (Am. Compl. ¶¶ 91–92, 108–09.) He also claims that Defendants Combs, Elam, and Manis violated his procedural due process rights by failing to review video evidence of Phillip's throwing out Plaintiff's shoes. (Am. Compl. ¶¶ 110.)

The availability of adequate compensation after-the-fact is a sufficient post-deprivation remedy for property loss. *See Hudson*, 468 U.S. at 534–36. Here, it is undisputed that Plaintiff was compensated for the loss of his shoes after raising the issue in a formal grievance. (*See* Aff. of C. Manis ¶¶ 9–12 & Encls. C, D, E.) This fact precludes any due-process claim based on the confiscation and destruction of Plaintiff's shoes. Accordingly, the court will grant summary judgment in Defendants' favor on this claim.

### v. Claims Related to Reynolds's Failure to Investigate Pauley's Actions

Plaintiff next claims that Defendant Reynolds's failure to investigate the alleged harassment and threats Plaintiff endured from C/O Pauley violated his Fourteenth Amendment right to due process. (Am. Compl. ¶¶ 87, 106.) But the failure to investigate is

not an independent basis for liability under § 1983. *See Anderson v. Clarke*, No. 7:23-CV-00618, 2024 WL 4173807, at *10 (W.D. Va. Sept. 12, 2024) (collecting cases); *see also Williams v. Berger*, No. 3:22CV433, 2022 WL 2718554, at *1–2 (E.D. Va. June 14, 2022), *aff'd*, No. 22-1739, 2022 WL 17103785 (4th Cir. Nov. 22, 2022) (dismissing plaintiff's claims that defendants improperly investigated accident that injured her "[b]ecause the defendants' failure to investigate the facts of the plaintiff's accident do[es] not implicate a constitutional right" (citing *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990); *Smith v. McCarthy*, 349 F. App'x 851, 859 (4th Cir. 2009))); *Williams v. Commonwealth's Att'y Off.*, No. 7:19-CV-00312, 2020 WL 411699, at *2 (W.D. Va. Jan. 24, 2020) ("[Plaintiff] has no legally significant interest in the criminal investigation or prosecution of the individuals who he claims committed crimes against him. Consequently, his claims based on the defendants' failure to investigate or prosecute those individuals do not give rise to any cognizable claim under § 1983."). Because Plaintiff has offered no evidence showing that Reynolds personally violated his due-process rights, Defendants are entitled to summary judgment on this claim as well.

     vi.   <u>Claims Related to Reynolds's Failure to Investigate Pauley's Actions</u>

Plaintiff's final due-process claims concern Williams's failure to pay his court filing fees on a monthly basis and Fleming and Elam's failure to remedy this through the grievance process. (Am. Compl. ¶¶ 85, 111.) Defendants argue that Plaintiff has failed to show how he suffered any loss of liberty or property without notice or opportunity be heard and therefore cannot succeed on a due process claim.

The court agrees that, though Plaintiff has a property interest in the funds in his inmate trust account and arguably has a liberty interest in having his court payments made in a timely

manner to avoid legal penalties for his failure to pay, he has not established a genuine issue of material fact as to whether he suffered any meaningful deprivation of either interest without due process of law. *See Prieto*, 780 F.3d at 248. In effect, Plaintiff has failed to offer any proof of actual injury stemming from Defendants' negligence. But even though "recovery in a § 1983 suit requires 'proof of actual injury,'" a deprivation of rights under § 1983 is still actionable for nominal damages even when a plaintiff fails to establish actual injury. *Hill v. Roop*, No. 2:19-CV-00140, 2022 WL 866266, at *3 (S.D.W. Va. Mar. 22, 2022) (quoting *Farrar v. Hobby*, 506 U.S. 103, 112 (1992)); *see also Burt v. Abel*, 585 F.2d 613, 616 (4th Cir. 1978) ("In order for a plaintiff who has suffered a deprivation of procedural due process to recover more than nominal damages, he must also prove that the procedural deprivation caused some independent compensable harm. . . . Thus, in most cases, a plaintiff who suffers only a procedural deprivation will recover no more than nominal damages.").

Because Plaintiff offers no proof that he suffered actual injury based on the alleged due-process violation, the court will grant summary judgment in Defendants' favor on any related claim for damages against Williams, Fleming, and Elam. But because Defendants have not shown conclusively that Plaintiff did not suffer a due-process violation based on the failure to pay his monthly fees, as was required by statute to maintain his civil suit, the court will deny summary judgment with regard to any claim for nominal damages.

## IV.

For the reasons set forth above, Defendants' motions for summary judgment will be granted in part and denied in part.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 30th day of September, 2025.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE